

1  LERACH COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  SHAWN A. WILLIAMS (213113)
   100 Pine Street, Suite 2600
3  San Francisco, CA  94111
   Telephone: 415/288-4545
4  415/288-4534 (fax)
   shawnw@lerachlaw.com
5        – and –
   DARREN J. ROBBINS (168593)
6  TRAVIS E. DOWNS III (148274)
   655 West Broadway, Suite 1900
7  San Diego, CA  92101
   Telephone: 619/231-1058
8  619/231-7423 (fax)
   billl@lerachlaw.com
9  darrenr@lerachlaw.com
   travisd@lerachlaw.com
10

   Attorneys for Plaintiff
11

                    UNITED STATES DISTRICT COURT
12
                    NORTHERN DISTRICT OF CALIFORNIA
13
                          SAN JOSE DIVISION
14
   FRANK A. GRUCEL, JR., Derivatively on )   No. 07 2848
15 Behalf of EXTREME NETWORKS, INC.,     )
                                         )   VERIFIED SHAREHOLDER DERIVATIVE
16                Plaintiff,             )   COMPLAINT FOR VIOLATION OF THE
                                         )   FEDERAL SECURITIES LAWS AND
17        vs.                            )   STATE LAW CLAIMS FOR BREACH OF
                                         )   FIDUCIARY DUTY, ABUSE OF
18 GORDON L. STITT, W. MICHAEL WEST,     )   CONTROL, CONSTRUCTIVE FRAUD,
   WILLIAM R. SLAKEY, MICHAEL J. PALU,   )   CORPORATE WASTE, UNJUST
19 ALEXANDER J. GRAY, HERB               )   ENRICHMENT, GROSS
   SCHNEIDER, FRANK C. CARLUCCI,         )   MISMANAGEMENT, ACTION FOR
20 STEPHEN HADDOCK, ALICIA JAYNE         )   ACCOUNTING AND VIOLATIONS OF
   MOORE, HARRY SILVERGLIDE, ROBERT      )   CALIFORNIA CORPORATIONS CODE
21 L. COREY, KENNETH LEVY, CHARLES P.    )
   CARINALLI and PETER WOLKEN,           )
22                                       )
                  Defendants,            )
23                                       )
          – and –                        )
24                                       )
   EXTREME NETWORKS, INC., a Delaware    )
25 corporation,                          )
                                         )
26                Nominal Defendant.     )   DEMAND FOR JURY TRIAL
                                         )
27

28

**NATURE OF THE ACTION**

1.     This is a shareholder derivative action brought by a shareholder of Extreme Networks, Inc. ("Extreme Networks" or the "Company") on behalf of the Company against its Board of Directors and certain of its senior executives (collectively, "Defendants"). This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement arising out of a scheme and wrongful course of business whereby Defendants allowed senior Extreme Networks insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to Extreme Networks insiders. Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since 1999.

2.     Between 1999 and 2006, Defendants also caused Extreme Networks to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by Extreme Networks carried with them an exercise price that was ***not less than*** the fair market value of Extreme Networks stock on the date of grant and issuance.

3.     In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be ***backdated*** to dates when the Company's shares were trading at or near the lowest price for that relevant period. By September 2006, Defendants' backdating scheme had yielded stock option grants to the Company's executive officers worth millions of dollars, which contributed to Defendants' ability to sell over $282 million worth of Extreme Networks stock.

4.     Extreme Networks' financial results as reported and filed with the SEC were false. Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as California and Delaware law. By authorizing and/or acquiescing in the stock option backdating scheme, Defendants: (i) caused Extreme Networks to issue false statements; (ii) diverted hundreds of millions of dollars of corporate assets to senior

1 | Extreme Networks executives; and (iii) subjected Extreme Networks to potential liability from

2 | regulators, including the SEC and the IRS.

3 |      5.    Defendants' gross mismanagement and malfeasance over the past decade has exposed

4 | Extreme Networks and its senior executives to criminal and civil liability for issuing false and

5 | misleading financial statements. Specifically, Defendants caused or allowed Extreme Networks to

6 | issue statements that failed to disclose or misstated the following: (i) that the Company had problems

7 | with its internal controls that prevented it from issuing accurate financial reports and projections; (ii)

8 | that because of improperly recorded stock-based compensation expenses, the Company's financial

9 | results violated Generally Accepted Accounting Principles ("GAAP"); and (iii) that the Company's

10 | public disclosures presented an inflated view of Extreme Networks' earnings and earnings per share.

11 |      6.    Defendants' malfeasance and mismanagement during the relevant period has wreaked

12 | hundreds of millions of dollars of damages on Extreme Networks. The Company's senior executives

13 | were incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-

14 | priced stock options and to issue false financial statements to cover up their misdeeds. Defendants'

15 | breaches of fiduciary duties in the administration of the Company's stock option plans so polluted

16 | the plans with grant date manipulations so as to void all grants made pursuant to the plans. The

17 | Company has now been mentioned as one of several companies likely to have manipulated options.

18 | Meanwhile, certain of the Defendants and former officers, who received under-priced stock options

19 | and/or knew material non-public information regarding Extreme Networks' internal control

20 | problems, abused their fiduciary relationship with the Company by selling over $282 million worth

21 | of their personally held shares at artificially inflated prices during the relevant period. This action

22 | seeks recovery for Extreme Networks against these faithless fiduciaries, as Extreme Networks'

23 | Board of Directors, as currently composed, is simply unable or unwilling to do so.

24 | **INTRADISTRICT ASSIGNMENT**

25 |      7.    A substantial part of the events or omissions which give rise to the claims in this

26 | action occurred in the county of Santa Clara and as such this action is properly assigned to the San

27 | Jose division of this Court.

28 |

**JURISDICTION AND VENUE**

8.    The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and under California and Delaware law for breach of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement.  In connection with the acts, conduct and other wrongs complained of herein, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.

9.    This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1331.  This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

10.    This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

11.    Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.  Extreme Networks is located in and conducts its business in this District.  Further, Defendants conduct business in this District, and certain of the Defendants are citizens of California and reside in this District.

**PARTIES**

12.    Plaintiff Frank A. Grucel, Jr. is, and at all relevant times was, a shareholder of nominal defendant Extreme Networks.

13.    Nominal party Extreme Networks is a Delaware corporation with its principal executive offices located at 3585 Monroe Street, Santa Clara, California.

14.    Defendant Gordon L. Stitt ("Stitt") co-founded Extreme Networks in 1996.  Stitt currently serves as Chairman of the Board, a position he has held since August 2006.  Previously, Stitt served as President, Chief Executive Officer ("CEO") and a director of the Company from its inception until August 2006, when he retired from these positions and was appointed Chairman.  Because of Stitt's positions, he knew the adverse non-public information about the business of

1  Extreme Networks, as well as its finances, markets and present and future business prospects, via

2  access to internal corporate documents, conversations and connections with other corporate officers

3  and employees, attendance at management and Board meetings and committees thereof and via

4  reports and other information provided to him in connection therewith.  During the relevant period,

5  Stitt participated in the issuance of false and/or misleading statements, including the preparation of

6  the false and/or misleading press releases and SEC filings.  Based on his knowledge of material non-

7  public information regarding the Company, defendant Stitt violated Cal. Corp. Code §§25402 and

8  25502.5 by selling 850,250 shares of Extreme Networks stock for proceeds of $41.1 million during

9  the relevant period.

10      15.    Defendant W. Michael West ("West") served as Chairman of the Board of Extreme

11  Networks from September 2004 until August 2006.  Defendant West remains on the Board as a

12  director.

13      16.    Defendant William R. Slakey ("Slakey") had been Senior Vice President and Chief

14  Financial Officer ("CFO") of Extreme Networks from 2004 until July 2006.  Because of Slakey's

15  positions, he knew the adverse non-public information about the business of Extreme Networks, as

16  well as its finances, markets and present and future business prospects, via access to internal

17  corporate documents, conversations and connections with other corporate officers and employees,

18  attendance at management meetings and via reports and other information provided to him in

19  connection therewith.  Defendant Slakey, by his specialized financial expertise, was in a unique

20  position to understand the business of Extreme Networks, as well as its finances, markets and present

21  and future business prospects.  During the relevant period, Slakey participated in the issuance of

22  false and/or misleading statements, including the preparation of the false and/or misleading press

23  releases and SEC filings.

24      17.    Defendant Michael J. Palu ("Palu") has served as Vice President and Corporate

25  Controller of Extreme Networks since 2004 and additionally served as Acting CFO from July 2006

26  until March 2007. Because of Palu's positions, he knew the adverse non-public information about

27  the business of Extreme Networks, as well as its finances, markets and present and future business

28  prospects, via access to internal corporate documents, conversations and connections with other

1  corporate officers and employees, attendance at management meetings and via reports and other

2  information provided to him in connection therewith.  Defendant Palu, by his specialized financial

3  expertise, was in a unique position to understand the business of Extreme Networks, as well as its

4  finances, markets and present and future business prospects.  During the relevant period, Palu

5  participated in the issuance of false and/or misleading statements, including the preparation of the

6  false and/or misleading press releases and SEC filings.

7      18.    Defendant Alexander J. Gray ("Gray") is Vice President and General Manager of

8  Scalable Products and previously served as Chief Operating Officer ("COO") of Extreme Networks.

9  Gray joined the Company in September 2002.  Because of Gray's positions, he knew the adverse

10  non-public information about the business of Extreme Networks, as well as its finances, markets and

11  present and future business prospects, via access to internal corporate documents, conversations and

12  connections with other corporate officers and employees, attendance at management meetings and

13  via reports and other information provided to him in connection therewith.  During the relevant

14  period, Gray participated in the issuance of false and/or misleading statements, including the

15  preparation of the false and/or misleading press releases and SEC filings.

16      19.    Defendant Herb Schneider ("Schneider") co-founded Extreme Networks in 1996 and

17  has served as Vice President, Research and Development since its inception.  Because of Schneider's

18  position, he knew the adverse non-public information about the business of Extreme Networks, as

19  well as its finances, markets and present and future business prospects, via access to internal

20  corporate documents, conversations and connections with other corporate officers and employees,

21  attendance at management meetings and via reports and other information provided to him in

22  connection therewith.  During the relevant period, Schneider participated in the issuance of false

23  and/or misleading statements, including the preparation of the false and/or misleading press releases

24  and SEC filings.  Based on his knowledge of material non-public information regarding the

25  Company, defendant Schneider violated Cal. Corp. Code §§25402 and 25502.5 by selling 717,707

26  shares of Extreme Networks stock for proceeds of $34.1 million during the relevant period.

27      20.    Defendant Frank C. Carlucci ("Carlucci") served as Senior Vice President of

28  Worldwide Sales of Extreme Networks from July 2004 until 2007.  Because of Carlucci's position,

1  he knew the adverse non-public information about the business of Extreme Networks, as well as its

2  finances, markets and present and future business prospects, via access to internal corporate

3  documents, conversations and connections with other corporate officers and employees, attendance

4  at management meetings and via reports and other information provided to him in connection

5  therewith.   During the relevant period, Carlucci participated in the issuance of false and/or

6  misleading statements, including the preparation of the false and/or misleading press releases and

7  SEC filings.

8      21.    Defendant Stephen Haddock ("Haddock") co-founded Extreme Networks in 1996 and

9  has served as Vice President and Chief Technical Officer since its inception.  Because of Haddock's

10 position, he knew the adverse non-public information about the business of Extreme Networks, as

11 well as its finances, markets and present and future business prospects, via access to internal

12 corporate documents, conversations and connections with other corporate officers and employees,

13 attendance at management meetings and via reports and other information provided to him in

14 connection therewith.  During the relevant period, Haddock participated in the issuance of false

15 and/or misleading statements, including the preparation of the false and/or misleading press releases

16 and SEC filings.   Based on his knowledge of material non-public information regarding the

17 Company, defendant Haddock violated Cal. Corp. Code §§25402 and 25502.5 by selling 972,100

18 shares of Extreme Networks stock for proceeds of $34.8 million during the relevant period.

19     22.    Defendant Alicia Jayne Moore ("Moore") has been Vice President, General Counsel

20 and Secretary of Extreme Networks since 2004.  Because of Moore's position, she knew the adverse

21 non-public information about the business of Extreme Networks, as well as its finances, markets and

22 present and future business prospects, via access to internal corporate documents, conversations and

23 connections with other corporate officers and employees, attendance at management meetings and

24 via reports and other information provided to her in connection therewith.   During the relevant

25 period, Moore participated in the issuance of false and/or misleading statements, including the

26 preparation of the false and/or misleading press releases and SEC filings.

27     23.    Defendant Harry Silverglide ("Silverglide") has been a director of Extreme Networks

28 since June 2004.  Previously, Silverglide served as Vice President of Worldwide Sales for Extreme

1  Networks from 1997 until 2001. Because of Silverglide's positions, he knew the adverse non-public

2  information about the business of Extreme Networks, as well as its finances, markets and present and

3  future business prospects, via access to internal corporate documents, conversations and connections

4  with other corporate officers and employees, attendance at management and/or Board meetings and

5  committees thereof and via reports and other information provided to him in connection therewith.

6  During the relevant period, Silverglide participated in the issuance of false and/or misleading

7  statements, including the preparation of the false and/or misleading press releases and SEC filings.

8  Based on his knowledge of material non-public information regarding the Company, defendant

9  Silverglide violated Cal. Corp. Code §§25402 and 25502.5 by selling 995,570 shares of Extreme

10  Networks stock for proceeds of $47.2 million during the relevant period.

11      24.    Defendant Robert L. Corey ("Corey") has been a director of Extreme Networks since

12  December 2003. Because of Corey's position, he knew the adverse non-public information about

13  the business of Extreme Networks, as well as its finances, markets and present and future business

14  prospects, via access to internal corporate documents, conversations and connections with other

15  corporate officers and employees, attendance at Board meetings and committees thereof and via

16  reports and other information provided to him in connection therewith. As a member of the

17  Compensation Committee, defendant Corey controlled the other Defendants' stock option awards.

18  As a member of the Audit and Nominating and Corporate Governance Committees, defendant Corey

19  caused or allowed the dissemination of the improper public statements described herein. During the

20  relevant period, Corey participated in the issuance of false and/or misleading statements, including

21  the preparation of the false and/or misleading press releases and SEC filings.

22      25.    Defendant Kenneth Levy ("Levy") has been a director of Extreme Networks since

23  October 2001. Because of Levy's position, he knew the adverse non-public information about the

24  business of Extreme Networks, as well as its finances, markets and present and future business

25  prospects, via access to internal corporate documents, conversations and connections with other

26  corporate officers and employees, attendance at Board meetings and committees thereof and via

27  reports and other information provided to him in connection therewith. As a member of the Audit

28  and Nominating and Corporate Governance Committees, defendant Levy caused or allowed the

1  dissemination of the improper public statements described herein.   As a member of the

2  Compensation Committee, defendant Levy controlled the other Defendants' stock option awards.

3  During the relevant period, Levy participated in the issuance of false and/or misleading statements,

4  including the preparation of the false and/or misleading press releases and SEC filings.

5      26.      Defendant Charles P. Carinalli ("Carinalli") has been a director of Extreme Networks

6  since October 1996.  Because of Carinalli's position, he knew the adverse non-public information

7  about the business of Extreme Networks, as well as its finances, markets and present and future

8  business prospects, via access to internal corporate documents, conversations and connections with

9  other corporate officers and employees, attendance at Board meetings and committees thereof and

10  via reports and other information provided to him in connection therewith.  As a member of the

11  Audit Committee, defendant Carinalli caused or allowed the dissemination of the improper public

12  statements described herein.  As a member of the Compensation Committee, defendant Carinalli

13  controlled the other Defendants' stock option awards.   During the relevant period, Carinalli

14  participated in the issuance of false and/or misleading statements, including the preparation of the

15  false and/or misleading press releases and SEC filings.  Based on his knowledge of material non-

16  public information regarding the Company, defendant Carinalli violated Cal. Corp. Code §§25402

17  and 25502.5 by selling 279,630 shares of Extreme Networks stock for proceeds of $8.5 million

18  during the relevant period.

19      27.      Defendant Peter Wolken ("Wolken") was a director of Extreme Networks from 1996

20  to 2004.  Because of Wolken's position, he knew the adverse non-public information about the

21  business of Extreme Networks, as well as its finances, markets and present and future business

22  prospects, via access to internal corporate documents, conversations and connections with other

23  corporate officers and employees, attendance at Board meetings and committees thereof and via

24  reports and other information provided to him in connection therewith.  During the relevant period,

25  Wolken participated in the issuance of false and/or misleading statements, including the preparation

26  of the false and/or misleading press releases and SEC filings.  Based on his knowledge of material

27  non-public information regarding the Company, defendant Wolken violated Cal. Corp. Code

28

1    §§25402 and 25502.5 by selling 3.27 million shares of Extreme Networks stock for proceeds of

2    $116.1 million during the relevant period.

3    28.    The defendants identified in ¶¶14-15 and 23-26 are referred to herein as the "Director

4    Defendants."  The defendants identified in ¶¶14 and 16-22 are referred to herein as the "Officer

5    Defendants."  The defendants identified in ¶¶14, 19, 21, 23 and 26-27 are referred to herein as the

6    "Insider Selling Defendants."

7                              **DEFENDANTS' DUTIES**

8    29.    Each officer and director of Extreme Networks named herein owed the Company and

9    Extreme Networks shareholders the duty to exercise a high degree of care, loyalty and diligence in

10   the management and administration of the affairs of the Company, as well as in the use and

11   preservation of its property and assets.  The conduct of Extreme Networks' directors and officers

12   complained of herein involves knowing, intentional and culpable violations of their obligations as

13   officers and directors of Extreme Networks.  Further, the misconduct of Extreme Networks' officers

14   has been ratified by Extreme Networks' Board, which has failed to take any legal action on behalf of

15   the Company against them.

16   30.    By reason of their positions as officers, directors and fiduciaries of Extreme Networks

17   and because of their ability to control the business and corporate affairs of the Company, the

18   Defendants owed Extreme Networks and its shareholders fiduciary obligations of candor, trust,

19   loyalty and care, and were required to use their ability to control and manage Extreme Networks in a

20   fair, just, honest and equitable manner, and to act in furtherance of the best interests of Extreme

21   Networks and its shareholders so as to benefit all shareholders equally and not in furtherance of their

22   personal interest or benefit.  In addition, as officers and/or directors of a publicly held company, the

23   Defendants had a duty to refrain from utilizing their control over Extreme Networks to divert assets

24   to themselves via improper and/or unlawful practices.  Defendants also had a duty to promptly

25   disseminate accurate and truthful information with respect to the Company's operations, earnings

26   and compensation practices.

27   31.    Because of their positions of control and authority as directors or officers of Extreme

28   Networks, each of the Defendants was able to and did, directly and indirectly, control the wrongful

1  acts complained of herein.  As to the Director Defendants, these acts include: (i) agreement to and/or

2  acquiescence in Defendants' option backdating scheme; (ii) willingness to cause Extreme Networks

3  to disseminate false Proxy Statements for 1999-2006, which Proxy Statements failed to disclose

4  Defendants' option backdating scheme and omitted the fact that executive officers were allowed to

5  backdate their stock option grants in order to manipulate the strike price of the stock options they

6  received.  Because of their positions with Extreme Networks, each of the Defendants was aware of

7  these wrongful acts, had access to adverse non-public information and was required to disclose these

8  facts promptly and accurately to Extreme Networks shareholders and the financial markets but failed

9  to do so.

10       32.     Between 1999 and 2006, Defendants repeated in each Proxy Statement that the stock

11  option grants made during that period carried an exercise price that was not less than the fair market

12  value of Extreme Networks stock on the date granted, as calculated by the public trading price of the

13  stock at the market's close on that date.  However, Defendants concealed until September 2006 that

14  the stock option grants were repeatedly and consciously *backdated* to ensure that the strike price

15  associated with the option grants was at or near the lowest trading price for that fiscal period.  Due to

16  Defendants' breach of their fiduciary duty in the administration of the stock option plans, plaintiff

17  seeks to have the directors' and officers' plans voided and gains from those plans returned to the

18  Company.   In the alternative, plaintiff seeks to have all of the unexercised options granted to

19  defendants between 1999 and 2003 cancelled, the financial gains obtained via the exercise of such

20  options returned to the Company and to have Defendants revise the Company's financial statements

21  to reflect the truth concerning these option grants.

22       33.     To discharge their duties, the directors of Extreme Networks were required to

23  exercise reasonable and prudent supervision over the management, policies, practices and controls of

24  the business and financial affairs of Extreme Networks.  By virtue of such duties, the officers and

25  directors of Extreme Networks were required, among other things, to:

26            (a)     manage, conduct, supervise and direct the business affairs of Extreme

27  Networks in accordance with all applicable law (including federal and state laws, government rules

28  and regulations and the charter and bylaws of Extreme Networks);

1          (b)    neither engage in self-dealing nor knowingly permit any officer, director or

2     employee of Extreme Networks to engage in self-dealing;

3          (c)    neither violate nor knowingly permit any officer, director or employee of

4     Extreme Networks to violate applicable laws, rules and regulations;

5          (d)    remain informed as to the status of Extreme Networks' operations, including

6     its practices in relation to the cost of allowing the pervasive backdating and improperly accounting

7     for such, and upon receipt of notice or information of imprudent or unsound practices, to make a

8     reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices

9     and make such disclosures as are necessary to comply with the U.S. federal securities laws and their

10    duty of candor to the Company's shareholders;

11         (e)    prudently protect the Company's assets, including taking all necessary steps to

12    recover corporate assets (cash, stock options) improperly paid to Company executives and directors

13    together with the related costs (professional fees) proximately caused by the illegal conduct

14    described herein;

15         (f)    establish and maintain systematic and accurate records and reports of the

16    business and affairs of Extreme Networks and procedures for the reporting of the business and

17    affairs to the Board of Directors and to periodically investigate, or cause independent investigation to

18    be made of, said reports and records;

19         (g)    maintain and implement an adequate, functioning system of internal legal,

20    financial and accounting controls, such that Extreme Networks' financial statements – including its

21    expenses, accounting for stock option grants and other financial information – would be accurate and

22    the actions of its directors would be in accordance with all applicable laws;

23         (h)    exercise control and supervision over the public statements to the securities

24    markets and trading in Extreme Networks stock by the officers and employees of Extreme Networks;

25    and

26         (i)    supervise the preparation and filing of any financial reports or other

27    information required by law from Extreme Networks and to examine and evaluate any reports of

28    examinations, audits or other financial information concerning the financial affairs of Extreme

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 11 -

1   Networks and to make full and accurate disclosure of all material facts concerning, *inter alia,* each

2   of the subjects and duties set forth above.

3        34.     Each Defendant, by virtue of his or her position as a director and/or officer, owed to

4   the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of

5   due care and diligence in the management and administration of the affairs of the Company, as well

6   as in the use and preservation of its property and assets. The conduct of the Defendants complained

7   of herein involves a knowing and culpable violation of their obligations as directors and/or officers

8   of Extreme Networks, the absence of good faith on their part, and a reckless disregard for their duties

9   to the Company and its shareholders which Defendants were aware or should have been aware posed

10  a risk of serious injury to the Company. The conduct of the Defendants who were also officers

11  and/or directors of the Company during the relevant period has been ratified by the Director

12  Defendants who comprised Extreme Networks' entire Board during the relevant period.

13       35.     Defendants breached their duties of loyalty and good faith by allowing or by

14  themselves causing the Company to misrepresent its financial results and prospects, as detailed

15  herein *infra,* and by failing to prevent the Defendants from taking such illegal actions. As a result,

16  Extreme Networks has expended and will continue to expend significant sums of money. Such

17  expenditures include, but are not limited to:

18            (a)     improvidently paid executive compensation;

19            (b)     increased capital costs as a result of the loss of market capitalization and the

20  Company's damaged reputation in the investment community;

21            (c)     costs incurred to carry out internal investigations and to prepare and file

22  restated financial statements, including legal fees paid to outside counsel; and

23            (d)     incurring possible IRS penalties for improperly reporting compensation.

24       36.     These actions have irreparably damaged Extreme Networks' corporate image and

25  goodwill. For at least the foreseeable future, Extreme Networks will suffer from what is known as

26  the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal

27  behavior and have misled the investing public, such that Extreme Networks' ability to raise equity

28  capital or debt on favorable terms in the future is now impaired.

**AIDING AND ABETTING AND CONCERTED ACTION**

37.    In committing the wrongful acts alleged herein, Defendants have pursued or joined in the pursuit of a common course of conduct and acted in concert with one another in furtherance of their common plan.

38.    During all times relevant hereto, Defendants collectively and individually initiated a course of conduct which was designed to and did: (i) conceal the fact that the Company was allowing its directors and senior officers to divert hundreds of millions of dollars to Extreme Networks insiders and directors and causing Extreme Networks to misrepresent its financial results; (ii) maintain Defendants' executive and directorial positions at Extreme Networks and the profits, power and prestige which Defendants enjoyed as a result of these positions; (iii) deceive the investing public, including shareholders of Extreme Networks, regarding Defendants' compensation practices and Extreme Networks' financial performance.

39.    The purpose and effect of Defendants' common course of conduct was, among other things, to disguise Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, corporate waste and unjust enrichment, to conceal adverse information concerning the Company's operation and financial condition and to artificially inflate the price of Extreme Networks common stock so they could dispose of millions of dollars of their own Extreme Networks stock, and enhance their executive and directorial positions and receive the substantial compensation they obtained as a result thereof.

40.    Defendants accomplished their common enterprise and/or common course of conduct by causing the Company to purposefully and/or recklessly engage in the option backdating scheme alleged herein and misrepresent Extreme Networks' financial results. Each of the Defendants was a direct, necessary, and substantial participant in the common enterprise and/or common course of conduct complained of herein.

41.    Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant acted with knowledge of the primary

1  wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or

2  her overall contribution to and furtherance of the wrongdoing.

3                                      **BACKGROUND**

4          42.      Extreme Networks is a provider of network infrastructure equipment for corporate,

5  government, education and healthcare enterprises and metropolitan telecommunications service

6  providers. The Company delivers hardware-based network switches with an operating system and

7  services infrastructure for enterprises and service providers.

8          43.      Throughout the relevant period, Defendants caused Extreme Networks to grant them

9  millions of stock options permitting them to buy Extreme Networks stock for pennies on the dollar

10  which they could in turn sell as the Company's stock price increased. A stock option gives the

11  holder the right to buy a stock at a certain price in the future. Typically, companies set that price at

12  the same time their directors approve an option grant, with an exercise price – also known as the

13  "strike price" – usually set at the closing price of the stock that day, the closing price of the night

14  before or by computing an average of the high and low prices on the day of the vote.

15          44.      However, many of the millions of options granted to Extreme Networks' executives

16  had a hidden, valuable component: they were misdated, often making them even more significantly

17  valuable. The misdated stock option grants fell largely into three categories: (i) "look back" grants,

18  in which the date of the grant was picked retroactively (*e.g.,* a decision in February to pick a January

19  date); (ii) "wait and see" grants, in which a grant date was selected, but the decision was finalized –

20  and sometimes changed – at a later date (*e.g.,* a decision on January 1 to issue a grant on January 15,

21  but there is a period after January 15 in which the grantor waits to see if a more advantageous price

22  occurs and, if one does, uses that later date instead); and (iii) grants where there was a failure to

23  complete the option grant process by the date of the grant (*e.g.,* where there is a decision to issue a

24  grant as of a certain date, but after that date there are changes in the grantees or amounts to grantees,

25  and although the work is not complete on those grants as of the stated grant date, that date is

26  nonetheless used).

27

28

## STOCK OPTION GRANTS

45.     Certain of Extreme Networks' manipulative stock option grants are described below (adjusted for stock split):

**Fiscal 2001 Option Grants[1]**

46.     Defendants dated most of Extreme Networks' fiscal 2001 option grants to top executives as of July 5, 2000 at $47.47 per share – near the low of the month. The stock closed as high as $78.50 per share in July 2000. Defendants Stitt, Haddock, Schneider and Silverglide received 400,000, 200,000, 200,000 and 200,000 options, respectively, at this $47.47 exercise price. Defendants dated the rest of Extreme Networks' fiscal 2001 option grants to top executives as of April 9, 2001 at $14.57 per share – near the low of the month. The stock traded as high as $32.90 per share in April 2001. Defendants Stitt, Haddock, Schneider and Silverglide received 200,000, 100,000, 100,000 and 100,000 options, respectively, at this $14.57 exercise price.

**Fiscal 2002 Option Grants**

47.     Defendants dated most of Extreme Networks' fiscal 2002 option grants to top executives as of December 28, 2001 at $12.76 per share – near the low of the month. The stock traded as high as $17.16 per share in December 2001. Defendants Stitt, Schneider and Haddock received 750,000, 385,000 and 385,000 options, respectively, at this $12.76 exercise price. Former officer Christopher Todd also received 850,000 options dated as of October 2, 2001 at $6.42 per share – the low of the month. The stock reached $13.87 per share in October 2001.

48.     Below are several of Extreme Networks' option grants which occurred right before significant stock price increases (adjusted for stock split):

---

[1]     Extreme Networks' fiscal year ends the first Sunday in July.





**Extreme Networks**
June 5, 2000 – August 7, 2000

**Extreme Networks**
March 9, 2001 – May 9, 2001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







**Extreme Networks**
September 23, 2003 - November 24, 2003

49.     Complicating matters and magnifying the harm to Extreme Networks, during the relevant period, Extreme Networks' internal controls and accounting controls with respect to option grants and exercises, and its financial reporting, were grossly inadequate. The weaknesses allowed dates of both grants and exercises to be manipulated and the Company's executive compensation expenses to be materially understated. They also allowed grant dates to be changed to provide executives with more favorably priced options, in effect augmenting their compensation, with no benefit running to the Company.

50.     Specifically, in many instances the reported dates Extreme Networks stock options were granted differed from the dates on which the options appear to have been actually granted. The practice applied to the overwhelming majority of stock option grants made during the relevant period, which allowed executives and employees to make more money on their options because it set a lower "strike price" at which the options could be exercised, allowing employees to take larger profits when the stock price later rose.

51.    Through their fiduciary duties of care, good faith and loyalty, Defendants owed to Extreme Networks a duty to ensure that the Company's financial reporting fairly presented, in all material respects, the operations and financial condition of the Company.   In order to adequately carry out these duties, it is necessary for the Defendants to know and understand the material non-public information to be either disclosed or omitted from the Company's public statements.  This material non-public information included the problems Extreme Networks faced because of its deficient internal controls.  Furthermore, Defendants who were members of the Audit Committee during the relevant period had a special duty to know and understand this material information as set out in the Audit Committee's charter, which provides that the Audit Committee is responsible for reviewing, in conjunction with management, the Company's policies generally with respect to the Company's earnings press releases and with respect to financial information and earnings guidance provided to analysts and rating agencies.  Defendants Stitt, Slakey, Palu, Haddock, Schneider, Gray, Carlucci and Moore, as officers of Extreme Networks, had ample opportunity to discuss this material information with their fellow officers at management meetings and via internal corporate documents and reports.  Moreover, Defendants who were directors of Extreme Networks had ample opportunity to discuss this material information with fellow directors at any of the scores of Board meetings that occurred during the relevant period as well as at committee meetings of the Board.  Despite these duties, Defendants negligently, recklessly, and/or intentionally caused or allowed, by their actions or inactions, the misleading statements to be disseminated by Extreme Networks to the investing public and the Company's shareholders during the relevant period.

52.    Specifically, since 1999, Defendants have caused Extreme Networks to report false and misleading fiscal and quarterly financial results which materially understated its compensation expenses and thus overstated its earnings (or understated its losses) as follows:

| FISCAL YEAR | REPORTED EARNINGS (LOSS) (IN MILLIONS) | REPORTED DILUTED EARNINGS (LOSS) PER SHARE ON CONTINUING OPERATIONS |
|---|---|---|
| 1999 | $(1.62) | |
| 2000 | $20.05 | $0.22 |
| 2001 | $(68.88) | $0.13 |
| 2002 | $(183.96) | $0.07 |
| 2003 | $(197.18) | $(1.54) |
| 2004 | $(1.75) | $(0.02) |
| 2005 | $12.94 | $0.11 |
| 2006 | $11.02 | $0.09 |

53.    Moreover, throughout the relevant period certain of the Defendants and former officers exercised many of these stock options contributing to their ability to sell over $282.2 million worth of Extreme Networks stock they obtained often by cashing in under-priced stock options:

| DEFENDANT | DATES OF SALES | SHARES SOLD | PROCEEDS RECEIVED |
|---|---|---|---|
| STITT | 8/30/99 – 11/6/00 | 850,250 | $41,179,868 |
| SCHNEIDER | 8/2/99 – 8/17/00 | 717,707 | $34,181,740 |
| HADDOCK | 8/30/99 – 8/31/04 | 972,100 | $34,821,632 |
| SILVERGLIDE | 8/13/99 – 11/8/01 | 995,570 | $47,263,063 |
| WOLKEN | 7/28/99 – 5/21/01 | 3,273,884 | $116,181,750 |
| CARINALLI | 10/19/99-11/30/05 | 279,630 | $8,592,222 |
| TOTAL | | 7,089,141 | $282,220,275 |

54.    On September 15, 2006, Extreme Networks filed a Form 8-K with the SEC about an SEC inquiry into its past stock option practices:

> Extreme Networks, Inc. today announced that its Board of Directors has appointed a special committee to review the company's historical practices for stock option grants and the accounting for option grants. The special committee has retained outside independent legal counsel to assist it in its review.
>
> The Company had earlier received and responded to an informal inquiry letter from the Securities and Exchange Commission requesting that the Company voluntarily provide documents related to the same subject matter. The Company is continuing to cooperate fully with such inquiry.
>
> As a result of the ongoing investigation, the Company will delay filing its Form 10-K for the year ended July 2, 2006. If the committee's review identifies any errors in the measurement date associated with stock option grants, adjustments to present and previously reported financial statements could be required.

55.    In effect, during the relevant period, defendants caused Extreme Networks to issue a series of materially false and misleading statements regarding the Company's financial results. These financial results misrepresented and omitted to disclose that the Company had problems with its

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 20 -

1  internal controls that prevented it from issuing accurate financial reports and that because of

2  improperly recorded stock-based compensation expenses the Company's publicly reported financial

3  statements and results presented an inflated view of Extreme Networks' earnings and earnings per

4  share.

5        56.    Worse yet, the members of Extreme Networks' Board of Directors refuse to take any

6  remedial actions against their fellow Board members and business allies responsible for the improper

7  reporting of the Company's stock-based compensation since 1999, although many of these same

8  Defendants pocketed $282.2 million in unlawful insider trading proceeds by bailing out of their own

9  Extreme Networks stock while it traded at prices artificially inflated by Defendants' false statements

10  about Extreme Networks' financial results.

11  **DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

12        57.    Plaintiff brings this action derivatively in the right and for the benefit of Extreme

13  Networks to redress injuries suffered and to be suffered by Extreme Networks as a direct result of

14  Defendants' violations of state and federal law, breaches of fiduciary duty, abuse of control,

15  constructive fraud, gross mismanagement, corporate waste and unjust enrichment, as well as the

16  aiding and abetting thereof, by the Defendants. This is not a collusive action to confer jurisdiction

17  on this Court which it would not otherwise have.

18        58.    Plaintiff will adequately and fairly represent the interests of Extreme Networks and its

19  shareholders in enforcing and prosecuting its rights.

20        59.    Plaintiff is an owner of Extreme Networks stock and was an owner of Extreme

21  Networks stock during times relevant to Defendants' illegal and wrongful course of conduct alleged

22  herein.

23        60.    Based upon the facts set forth throughout this Complaint, applicable law and the

24  longstanding rule that equity does not compel a useless and futile act, a pre-filing demand upon the

25  Extreme Networks Board of Directors to institute this action against the officers and members of the

26  Extreme Networks Board of Directors is excused as futile. A pre-filing demand would be a useless

27  and futile act because:

28

1    (a)    The members of Extreme Networks' Board have demonstrated their

2 unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue

3 themselves and/or their fellow directors and allies in the top ranks of the corporation for the

4 violations of law complained of herein.  These are people they have developed professional

5 relationships with, who are their friends and with whom they have entangling financial alliances,

6 interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any

7 such action.

8    (b)    The Extreme Networks Board of Directors and senior management

9 participated in, approved and/or permitted the wrongs alleged herein to have occurred and

10 participated in efforts to conceal or disguise those wrongs from Extreme Networks' stockholders or

11 recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not

12 disinterested parties.  As a result of their access to and review of internal corporate documents, or

13 conversations and connections with other corporate officers, employees, and directors and

14 attendance at management and/or Board meetings, each of the Defendants knew the adverse non-

15 public information regarding the improper stock option grants and financial reporting.  Pursuant to

16 their specific duties as Board members, the Director Defendants are charged with the management of

17 the Company and to conduct its business affairs.  Defendants breached the fiduciary duties that they

18 owed to Extreme Networks and its shareholders in that they failed to prevent and correct the

19 improper stock option granting and financial reporting.  Certain directors are also dominated and

20 controlled by other directors and cannot act independently of them.  Thus, the Extreme Networks

21 Board cannot exercise independent objective judgment in deciding whether to bring this action or

22 whether to vigorously prosecute this action because each of its members participated personally in

23 the wrongdoing or are dependent upon other Defendants who did.

24    (c)    The acts complained of constitute violations of the fiduciary duties owed by

25 Extreme Networks' officers and directors and these acts are incapable of ratification.

26    (d)    The members of Extreme Networks' Board have benefited, and will continue

27 to benefit, from the wrongdoing herein alleged and have engaged in such conduct to preserve their

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS    - 22 -

1  positions of control and the perquisites derived thereof, and are incapable of exercising independent

2  objective judgment in deciding whether to bring this action.

3          (e)     Any suit by the current directors of Extreme Networks to remedy these

4  wrongs would likely further expose the liability of Defendants under the federal securities laws,

5  which could result in additional civil and/or criminal actions being filed against one or more of the

6  Defendants, thus, they are hopelessly conflicted in making any supposedly independent

7  determination whether to sue themselves.

8          (f)     Extreme Networks has been and will continue to be exposed to significant

9  losses due to the wrongdoing complained of herein, yet the current Board has not filed any lawsuits

10  against itself or others who were responsible for that wrongful conduct to attempt to recover for

11  Extreme Networks any part of the damages Extreme Networks suffered and will suffer thereby.

12          (g)     In order to properly prosecute this lawsuit, it would be necessary for the

13  directors to sue themselves and the other Defendants, requiring them to expose themselves and their

14  comrades to millions of dollars in potential civil liability and criminal sanctions, or IRS penalties.

15  This they will not do.

16          (h)     Extreme Networks' current and past officers and directors are protected

17  against personal liability for their acts of mismanagement, waste and breach of fiduciary duty alleged

18  in this Complaint by directors' and officers' liability insurance which they caused the Company to

19  purchase for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of

20  Extreme Networks.  However, due to certain changes in the language of directors' and officers'

21  liability insurance policies in the past few years, the directors' and officers' liability insurance

22  policies covering the Defendants in this case contain provisions which eliminate coverage for any

23  action brought directly by Extreme Networks against these Defendants, known as, *inter alia,* the

24  "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain

25  of the officers of Extreme Networks, there would be no directors' and officers' insurance protection

26  and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is

27  brought derivatively, as this action is brought, such insurance coverage exists and will provide a

28  basis for the Company to effectuate a recovery.

1        (i)     In order to bring this action for breaching their fiduciary duties, the members

2 of the Extreme Networks Board would have been required to sue themselves and/or their fellow

3 directors and allies in the top ranks of the Company, who are their personal friends and with whom

4 they have entangling financial alliances, interests and dependencies, which they would not do.

5       61.    Plaintiff has not made any demand on shareholders of Extreme Networks to institute

6 this action since such demand would be a futile and useless act for the following reasons:

7        (a)     Extreme Networks is a publicly traded company with approximately 119

8 million shares outstanding, and thousands of shareholders;

9        (b)     Making demand on such a number of shareholders would be impossible for

10 plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

11       (c)     Making demand on all shareholders would force plaintiff to incur huge

12 expenses, assuming all shareholders could be individually identified.

## THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT ON EXTREME NETWORKS' FINANCIAL STATEMENTS

### The Fiscal 1999 Form 10-K

62.    On or about September 24, 1999, the Company filed its fiscal 1999 Form 10-K with the SEC. The fiscal 1999 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1999 Form 10-K included Extreme Networks' fiscal 1999 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Extreme Networks' compensation expense was understated and its net earnings were overstated.

### The Fiscal 2000 Form 10-K

63.    On or about September 29, 2000, the Company filed its fiscal 2000 Form 10-K with the SEC. The fiscal 2000 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2000 Form 10-K included Extreme Networks' fiscal 2000 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Extreme Networks' compensation expense was understated and its net earnings were overstated.

**The Fiscal 2001 Form 10-K**

64.    On or about September 26, 2001, the Company filed its fiscal 2001 Form 10-K with the SEC. The fiscal 2001 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2001 Form 10-K included Extreme Networks' fiscal 2001 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Extreme Networks' compensation expense was understated and its net earnings were overstated.

**The Fiscal 2002 Form 10-K**

65.    On or about September 30, 2002, the Company filed its fiscal 2002 Form 10-K with the SEC. The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2002 Form 10-K included Extreme Networks' fiscal 2002 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Extreme Networks' compensation expense was understated and its net earnings were overstated.

**The Fiscal 2003 Form 10-K**

66.    On or about September 26, 2003, the Company filed its fiscal 2003 Form 10-K with the SEC. The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2003 Form 10-K included Extreme Networks' fiscal 2003 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Extreme Networks' compensation expense was understated and its net earnings were overstated.

**The Fiscal 2004 Form 10-K**

67.    On or about September 3, 2004, the Company filed its fiscal 2004 Form 10-K with the SEC. The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2004 Form 10-K included Extreme Networks' fiscal 2004 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Extreme Networks' compensation expense was understated and its net earnings were overstated.

**The Fiscal 2005 Form 10-K**

68.    On or about September 8, 2005, the Company filed its fiscal 2005 Form 10-K with the SEC. The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2005 Form 10-K included Extreme Networks' fiscal 2005 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Extreme Networks' compensation expense was understated and its net earnings were overstated.

<center>**DEFENDANTS' SCHEME BEGINS TO UNRAVEL**</center>

69.    The 1999-2005 Proxy Statements concealed Defendants' option backdating scheme. Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on proxy proposals between 1999 and 2005.

70.    Then, on September 15, 2006, Extreme Networks announced that the SEC had initiated an inquiry of Extreme Networks' stock option grant practices

71.    Each dollar diverted to Defendants via the option backdating scheme has come at the expense of the Company. For example, if Stitt's 400,000 options granted in July 2000 had not been manipulated, but rather had a strike price of $60 per share, the price just a week after the options grant date, instead of the $47.47 per share strike price, which was near the trading low for the month, when Stitt exercised those options the Company would receive $24 million instead of less than $19 million – *a cost to the Company of $5 million for this single instance of option backdating*.

<center>**THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT**</center>

72.    Unlike most companies which avoid such option backdating abuse by issuing stock option grants at the same time each year, which eliminates the potential for backdating, Defendants ensured that executives would not have any such restrictions. Given the many times Extreme Networks' grants were the low of the month in which options were granted, the date of their stock option grants was clearly more than merely coincidental.

73.    As a result of the backdating of options, Defendants have been unjustly enriched at the expense of Extreme Networks, which has received and will receive less money from Defendants

1  when they exercise their options at prices substantially lower than they would have if the options had

2  not been backdated.

3  <div align="center">**TOLLING OF THE STATUTE OF LIMITATIONS**</div>

4      74.    The Counts alleged herein are timely.  As an initial matter, Defendants wrongfully

5  concealed their manipulation of the stock option grants, through strategic timing and fraudulent

6  backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Extreme

7  Networks' public investors that Extreme Networks' option grants were being administered by a

8  committee of independent directors, and by failing to disclose that backdated options were, in fact,

9  actually issued on dates other than those disclosed, and that strategically timed option grants were

10  issued based on the manipulation of insider information that ensured that the true fair market value

11  of the Company's stock was, in fact, higher than the publicly traded price on the date of the option

12  grant.

13      75.    Extreme Networks' public investors had no reason to know of the Defendants'

14  breaches of their fiduciary duties until September 15, 2006, when Extreme Networks announced that

15  the SEC had initiated an inquiry of the Company's stock option grant practices.

16      76.    Finally, as fiduciaries of Extreme Networks and its public shareholders, the

17  Defendants cannot rely on any limitations defense where they withheld from Extreme Networks'

18  public shareholders the facts that give rise to the claims asserted herein, *i.e.,* that the Extreme

19  Networks Board had abdicated its fiduciary responsibilities to oversee the Company's executive

20  compensation practices, and that the option grant dates had been manipulated to maximize the profit

21  for the grant recipients and, accordingly, to maximize the costs for the Company.

22  <div align="center">**COUNT I**</div>

23  <div align="center">**Violations of §14(a) of the Exchange Act Against**
<br>**All Defendants**</div>

24

25      77.    Plaintiff incorporates by reference and realleges each and every allegation set forth

above, as though fully set forth herein.

26

27      78.    Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no

28  proxy statement shall contain "any statement which, at the time and in the light of the circumstances

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS    - 27 -

1    under which it is made, is false or misleading with respect to any material fact, or which omits to

2    state any material fact necessary in order to make the statements therein not false or misleading." 17

3    C.F.R. §240.14a-9.

4         79.    The 1999-2005 Proxy Statements violated §14(a) and Rule 14a-9 because they

5    omitted material facts, including the fact that certain of the Defendants were causing Extreme

6    Networks to engage in an option backdating scheme, a fact which Defendants were aware of and

7    participated in from at least 1999.

8         80.    In the exercise of reasonable care, Defendants should have known that the Proxy

9    Statements were materially false and misleading.

10         81.    The misrepresentations and omissions in the Proxy Statements were material to

11    plaintiff in voting on each Proxy Statement.  The Proxy Statements were an essential link in the

12    accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as

13    revelations of the truth would have immediately thwarted a continuation of shareholders'

14    endorsement of the directors' positions, the executive officers' compensation and the Company's

15    compensation policies.

16         82.    The Company was damaged as a result of the material misrepresentations and

17    omissions in the Proxy Statements.

18    <div align="center">**COUNT II**</div>

19    <div align="center">**Accounting**</div>

20         83.    Plaintiff incorporates by reference and realleges each and every allegation set forth

21    above, as though fully set forth herein.

22         84.    At all relevant times, Defendants, as directors and/or officers of Extreme Networks,

23    owed the Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

24         85.    In breach of their fiduciary duties owed to Extreme Networks and its shareholders,

25    the Defendants caused Extreme Networks, among other things, to grant backdated stock options to

26    themselves and/or certain other officers and directors of Extreme Networks and/or failed to properly

27    investigate whether these grants had been improperly made.  By this wrongdoing, the Defendants

28    breached their fiduciary duties owed to Extreme Networks and its shareholders.

1    86.    The Defendants possess complete and unfettered control over the improperly issued

2  stock option grants and the books and records of the Company concerning the details of such

3  improperly backdated stock option grants to certain of the Defendants.

4    87.    As a result of Defendants' misconduct, Extreme Networks has been substantially

5  injured and damaged financially and is entitled to a recovery as a result thereof, including the

6  proceeds of those improperly granted options which have been exercised and sold.

7    88.    Plaintiff demands an accounting be made of all stock option grants made to any of the

8  Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the

9  value of the grants, the recipients of the grants, the exercise date of stock options granted to any of

10  the Defendants, as well as the disposition of any proceeds received by any of the Defendants via sale

11  or other exercise of backdated stock option grants received by those Defendants.

12                                    **COUNT III**

13                **Breach of Fiduciary Duty and/or Aiding and Abetting**
                                **Against All Defendants**
14

15    89.    Plaintiff incorporates by reference and realleges each and every allegation set forth

16  above, as though fully set forth herein.

17    90.    Each of the Defendants agreed to and did participate with Stitt and the other

18  Defendants and/or aided and abetted one another in a deliberate course of action designed to divert

19  corporate assets in breach of fiduciary duties the Defendants owed to the Company.

20    91.    The Defendants have violated fiduciary duties of care, loyalty, candor and

21  independence owed to Extreme Networks and its public shareholders, have engaged in unlawful self-

22  dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the

23  interests of Extreme Networks and its shareholders.

24    92.    As demonstrated by the allegations above, Defendants failed to exercise the care

25  required, and breached their duties of loyalty, good faith, candor and independence owed to Extreme

26  Networks and its public shareholders, and they failed to disclose material information and/or made

27  material misrepresentations to shareholders regarding Defendants' option backdating scheme.

28

1      93.    By reason of the foregoing acts, practices and course of conduct, the Defendants have

2  failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward

3  Extreme Networks and its public shareholders.

4      94.    As a proximate result of Defendants' conduct, in concert with Stitt, Extreme

5  Networks has been injured and is entitled to damages.

<div align="center">

**COUNT IV**

**Abuse of Control Against All Defendants**

</div>

8      95.    Plaintiff incorporates by reference and realleges each and every allegation set forth

9  above, as though fully set forth herein.

10     96.    The Defendants employed the alleged scheme for the purpose of maintaining and

11  entrenching themselves in their positions of power, prestige and profit at, and control over, Extreme

12  Networks, and to continue to receive the substantial benefits, salaries and emoluments associated

13  with their positions at Extreme Networks.  As a part of this scheme, Defendants actively made

14  and/or participated in the making of or aided and abetted the making of, misrepresentations

15  regarding Extreme Networks.

16     97.    Defendants' conduct constituted an abuse of their ability to control and influence

17  Extreme Networks.

18     98.    By reason of the foregoing, Extreme Networks has been damaged.

<div align="center">

**COUNT V**

**Gross Mismanagement Against All Defendants**

</div>

21     99.    Plaintiff incorporates by reference and realleges each and every allegation set forth

22  above, as though fully set forth herein.

23     100.    Defendants had a duty to Extreme Networks and its shareholders to prudently

24  supervise, manage and control the operations, business and internal financial accounting and

25  disclosure controls of Extreme Networks.

26     101.    Defendants, by their actions and by engaging in the wrongdoing described herein,

27  abandoned and abdicated their responsibilities and duties with regard to prudently managing the

28  businesses of Extreme Networks in a manner consistent with the duties imposed upon them by law.

1 By committing the misconduct alleged herein, Defendants breached their duties of due care,

2 diligence and candor in the management and administration of Extreme Networks' affairs and in the

3 use and preservation of Extreme Networks' assets.

4     102.    During the course of the discharge of their duties, Defendants knew or recklessly

5 disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants

6 caused Extreme Networks to engage in the scheme complained of herein which they knew had an

7 unreasonable risk of damage to Extreme Networks, thus breaching their duties to the Company. As

8 a result, Defendants grossly mismanaged Extreme Networks.

9     103.    By reason of the foregoing, Extreme Networks has been damaged.

10 <div align="center">**COUNT VI**</div>

11 <div align="center">**Constructive Fraud Against All Defendants**</div>

12     104.    Plaintiff incorporates by reference and realleges each and every allegation set forth

13 above, as though fully set forth herein.

14     105.    As corporate fiduciaries, Defendants owed to Extreme Networks and its shareholders

15 a duty of candor and full accurate disclosure regarding the true state of Extreme Networks' business

16 and assets and their conduct with regard thereto.

17     106.    As a result of the conduct complained of, Defendants made, or aided and abetted the

18 making of, numerous misrepresentations to and/or concealed material facts from Extreme Networks'

19 shareholders despite their duties to, *inter alia,* disclose the true facts regarding their stewardship of

20 Extreme Networks. Thus they have committed constructive fraud and violated their duty of candor.

21     107.    By reason of the foregoing, Extreme Networks has been damaged.

22 <div align="center">**COUNT VII**</div>

23 <div align="center">**Corporate Waste Against All Defendants**</div>

24     108.    Plaintiff incorporates by reference and realleges each and every allegation set forth

25 above, as though fully set forth herein.

26     109.    By failing to properly consider the interests of the Company and its public

27 shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to

28

1  Defendants via the option backdating scheme, Defendants have caused Extreme Networks to waste

2  valuable corporate assets.

3        110.    As a result of Defendants' corporate waste, they are liable to the Company.

4  <center>**COUNT VIII**</center>

5  <center>**Unjust Enrichment Against All Defendants**</center>

6        111.    Plaintiff incorporates by reference and realleges each and every allegation set forth

7  above, as though fully set forth herein.

8        112.    As a result of the conduct described above, Defendants will be and have been unjustly

9  enriched at the expense of Extreme Networks, in the form of unjustified salaries, benefits, bonuses,

10  stock option grants and other emoluments of office.

11        113.    All the payments and benefits provided to the Defendants were at the expense of

12  Extreme Networks. The Company received no benefit from these payments. Extreme Networks

13  was damaged by such payments.

14        114.    Certain of the Defendants sold Extreme Networks stock for a profit during the period

15  of deception, misusing confidential non-public corporate information. These Defendants should be

16  required to disgorge the gains which they have and/or will otherwise unjustly obtain at the expense

17  of Extreme Networks. A constructive trust for the benefit of the Company should be imposed

18  thereon.

19  <center>**COUNT IX.**</center>

20  <center>**Against the Officer Defendants for Rescission**</center>

21        115.    Plaintiff incorporates by reference and realleges each and every allegation contained

22  above as though fully set forth herein.

23        116.    As a result of the acts alleged herein, the stock option contracts between the Officer

24  Defendants and Extreme Networks entered into during the relevant period were obtained through

25  Defendants' fraud, deceit, and abuse of control. Further, the backdated stock options were illegal

26  grants and thus invalid as they were not authorized in accordance with the terms of the publicly filed

27  contracts regarding the Officer Defendants' employment agreements and the Company's stock

28  option plan which was also approved by Extreme Networks shareholders and filed with the SEC.

117.    All contracts which provide for stock option grants between the Officer Defendants and Extreme Networks and were entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

## COUNT X

### Against the Insider Selling Defendants for Violation of California Corporations Code §25402

118.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

119.    At the time that the Insider Selling Defendants sold their Extreme Networks common stock as set forth herein at ¶53, by reason of their high executive and/or directorial positions with Extreme Networks, the Insider Selling Defendants had access to highly material information regarding the Company, including the information set forth herein regarding the true adverse facts of Extreme Networks' improper accounting.

120.    At the time of such sales, that information was not generally available to the public or the securities markets.  Had such information been generally available, it would have significantly reduced the market price of Extreme Networks shares at that time.

121.    The Insider Selling Defendants, and each of them, had actual knowledge of material, adverse non-public information and thus sold their Extreme Networks common stock in California in violation of California Corporations Code §25402.

122.    Pursuant to California Corporations Code §25502.5, the Insider Selling Defendants, and each of them, are liable to Extreme Networks for damages in an amount up to three times the difference between the price at which Extreme Networks common stock was sold by these defendants, and each of them, and the market value which that Extreme Networks common stock would have had at the time of the sale if the information known to these defendants, and each of them, had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

**COUNT XI**

**Against the Insider Selling Defendants for Breach of Fiduciary
Duties for Insider Selling and Misappropriation of Information**

123.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

124.    At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold Extreme Networks common stock on the basis of such information.

125.    The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects.    It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Extreme Networks common stock.

126.    At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated.  The Insider Selling Defendants' sales of Extreme Networks common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

127.    Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands judgment as follows:

A.    Awarding money damages against all Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, to ensure Defendants do not participate therein or benefit thereby;

B.    Directing all Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and imposing a constructive trust thereon;

C.    Directing Extreme Networks to take all necessary actions to reform and improve its corporate governance and internal control procedures to comply with applicable law, including, but not limited to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote adoption of the following Corporate Governance policies:

(i)    a proposal requiring that the office of CEO of Extreme Networks and Chairman of the Extreme Networks Board of Directors be permanently held by separate individuals and that the Chairman of the Extreme Networks Board meets rigorous "independent" standards;

(ii)    a proposal to strengthen the Extreme Networks Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

(iii)    appropriately test and then strengthen the internal audit and control function;

(iv)    rotate independent auditing firms every five years;

(v)    control and limit insider stock selling and the terms and timing of stock option grants; and

(vi)    reform executive compensation.

D.    Ordering the imposition of a constructive trust over Defendants' stock options and any proceeds derived therefrom;

E.    Awarding punitive damages;

F.    Awarding costs and disbursements of this action, including reasonable attorneys', accountants', and experts' fees; and

G.    Granting such other and further relief as this Court may deem just and proper.

1

**JURY DEMAND**

2

    Plaintiff demands a trial by jury.

3

DATED: May 31, 2006

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS

_____
      SHAWN A. WILLIAMS

100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
TRAVIS E. DOWNS III
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

S:\CptDraft\Derivative\Cpt Extreme Networks Derv.doc

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

- 36 -

1

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

2          Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3   named parties, there is no such interest to report.

4

5

6          _____
           ATTORNEY OF RECORD FOR PLAINTIFF
7          FRANK A. GRUCEL, JR.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXTREME NETWORK. VERIFICATION

I, Frank Anthony Grucel Jr., hereby verify that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: _May 14 - 2007_    _____
                          SIGNATURE