LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JOHN K. GRANT (169813)
SHAWN A. WILLIAMS (213113)
MONIQUE C. WINKLER (213031)
AELISH M. BAIG (201279)
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)
johng@lerachlaw.com
shawnw@lerachlaw.com
mwinkler@lerachlaw.com
abaig@lerachlaw.com

[Proposed] Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| YENNA WU, Derivatively on Behalf of Nominal Defendant EXTREME NETWORKS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> GORDON L. STITT, et al., <br><br> Defendants, <br><br> – and – <br><br> EXTREME NETWORKS, INC., <br><br> Nominal Defendant. | No. C-07-02268-HRL <br><br> NOTICE OF MOTION AND MOTION TO CONSOLIDATE ACTIONS AND TO APPOINT FRANK A. GRUCEL, JR. LEAD PLAINTIFF AND APPOINT LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> DATE: July 17, 2007 <br> TIME: 10:00 a.m. <br> COURTROOM: 2, 5th Floor <br> JUDGE: The Honorable Howard R. Lloyd |

| | | |
|---|---|---|
| 1 | LINDA ERIKSON, Derivatively on Behalf of Nominal Defendant EXTREME NETWORKS, INC., | ) ) ) |
| 2 | | ) |
| 3 | Plaintiff, | ) ) |
| 4 | vs. | ) ) |
| 5 | GORDON L. STITT, et al., | ) ) |
| 6 | Defendants, | ) ) |
| 7 | – and – | ) ) |
| 8 | EXTREME NETWORKS, INC., | ) ) |
| 9 | Nominal Defendant. | ) ) |
| 10 | FRANK A. GRUCEL, JR., Derivatively on Behalf of EXTREME NETWORKS, INC., | ) ) |
| 11 | | ) |
| 12 | Plaintiff, | ) ) |
| 13 | vs. | ) ) |
| 14 | GORDON L. STITT, et al., | ) ) |
| 15 | Defendants, | ) ) |
| 16 | – and – | ) ) |
| 17 | EXTREME NETWORKS, INC., a Delaware corporation, | ) ) |
| 18 | Nominal Defendant. | ) ) |

Case numbers: No. C-07-02388-RS (top block); No. C-07-02848-PVT (bottom block)

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on July 17, 2007 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Howard R. Lloyd, United States Magistrate Judge, 280 South First Street, San Jose, California, Courtroom 2, 5th Floor, plaintiff Frank A. Grucel, Jr. ("Grucel") will, and hereby does, move this Court for an order: (i) consolidating all pending and subsequently filed derivative stock option backdating actions on behalf of nominal defendant Extreme Networks, Inc. ("Extreme Networks" or the "Company"); and (ii) appointing Grucel lead plaintiff and Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") lead counsel. The motion is supported by the Declaration of Shawn A. Williams in Support of Motion to Consolidate Actions and to Appoint Frank A. Grucel, Jr. Lead Plaintiff and Appoint Lerach Coughlin Stoia Geller Rudman & Robbins LLP Lead Counsel ("Williams Decl.").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On September 15, 2006, Extreme Networks announced that it had received an inquiry letter from the SEC regarding its stock option backdating practices, and the Company appointed a special committee to review the Company's option granting practices. ¶54.[1] To date, the members of Extreme Networks' Board of Directors refuse to take any remedial actions against their fellow board members and business allies responsible for the improper reporting of the Company's stock-based compensation since 1999, although many of these same defendants pocketed $282.2 million in unlawful insider trading proceeds by bailing out of their own Extreme Networks stock while it traded at prices artificially inflated by defendants' false statements about Extreme Networks' financial results. ¶56.

---

[1] Unless otherwise noted, all paragraph ("¶") references are to the Verified Shareholder Derivative Complaint for Violation of the Federal Securities Laws and State Law Claims for Breach of Fiduciary Duty, Abuse of Control, Constructive Fraud, Corporate Waste, Unjust Enrichment, Gross Mismanagement, Action for Accounting and Violation of California Corporations Code, filed May 31, 2007 by Grucel, derivatively on behalf of Extreme Networks (the "Complaint"), *Grucel v. Stitt, et al.* (the "*Grucel* Action").

"Backdating" is a practice by which a stock option is publicly reported as having been granted on a certain date, but is actually granted weeks or months later when the stock was trading at a higher price. Such backdating allows company executives and stock option grantees to realize immediate unearned and undisclosed financial gains at the expense of the company's shareholders. Lynn Turner, the Securities and Exchange Commission ("SEC"s) former Chief Accountant, described backdating as follows: "It's like allowing people to place bets on a horse race after the horses have crossed the finish line. . . ." Williams Decl., Ex. 1. Arthur Levitt, former Chairman of the SEC, described backdating as stealing: "*[i]t is ripping off shareholders in an unconscionable way*" and "'*represents the ultimate in greed*' . . . ." Williams Decl., Ex. 2.[2] To be certain, option backdating violates both the federal securities laws and state corporate fiduciary laws. Former SEC Chairman Harvey Pitt has opined:

> Many discussions of backdating options start with the observation that backdating is not, per se, illegal. ***That is wrong.*** Options backdating frequently involves falsification of records used to gain access to corporate assets. That conduct violates the Foreign Corrupt Practices Act and its internal controls requirements. If corporate directors were complicit in these efforts, state law fiduciary obligations are violated. ***Backdating is not only illegal and unethical, it points to a lack of integrity in a company's internal controls.***

Williams Decl., Ex. 3.

Defendants' backdating scheme not only surreptitiously and illegally lined their own pockets and caused the Company to issue false financial statements, but it undermined the key purpose of option based executive compensation, which is to provide an incentive to improve the Company's performance and increase the Company's stock price. By backdating options such that they carry a strike price lower than the trading price of the stock at the time of option issuance, executives profit immediately upon the award of the option without doing anything to improve the Company's business or financial condition – a situation which President Bush has declared "bad for America":

> [O]vercompensating or trying to backdate things is bad for America, and there ought to be consequences when people don't tell the truth and are not transparent.

Williams Decl., Ex. 4.

---

[2] All emphasis is added and citations and quotations are omitted unless otherwise noted.

In this case, Extreme Networks has already suffered substantial damages resulting from the defendants' self-dealing and bad faith. For example, the Company has been forced to conduct a costly internal investigation to uncover the details of the improperly backdated stock option grants. Moreover, Extreme Networks has recently announced that the Company expects to restate certain historical financial statements to record additional stock-based compensation expense as a result of defendants' options manipulation.

## II.    SUMMARY OF THE FACTS AND PROCEDURAL HISTORY

### A.    The *Grucel* Action

Grucel's shareholder derivative action is brought on behalf of Extreme Networks against its directors and certain senior executives for breach of fiduciary duty and violations of federal securities law and state corporation law. Specifically, between at least fiscal 1999 and 2003, defendants caused Extreme Networks to secretly grant hundreds of thousands of stock options, many of which were backdated to provide the Extreme Networks insiders with lower strike prices. ¶¶43-50.

The Complaint further alleges that the illegal backdating caused the Company to materially understate publicly reported compensation expenses in violation of Generally Accepted Accounting Principles ("GAAP"), thereby artificially inflating Extreme Networks's publicly reported financial results. ¶¶5, 52. The publication of Extreme Network's false financial statements also caused the Company's stock to trade at artificially inflated prices. ¶55-56.

While the price of the Company's stock was artificially inflated and its financials materially misstated, Extreme Networks's officers and directors engaged in insider trading, selling more than ***$282 million*** worth of Extreme Network stock in violation of the federal securities and state fiduciary laws, including Cal. Corp. Code §§25402 and 25502.5, the latter of which allows for the recovery of treble damages. ¶¶53, 118-122. One of the Company's long-time directors, Peter Wolken ("Wolken") alone sold over $116 million in Extreme Network stock during the relevant period. ¶53.

The charts below, reproduced from ¶48 of the Complaint, illustrate the suspect timing of the option grants – immediately prior to sharp increases in Extreme Networks' stock price:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





NOT OF MTN & MTN TO CONSOLIDATE ACTIONS & APPT LD PLTF & LD COUNSEL; MEMO
OF Ps & As IN SUPP THEREOF - C-07-02268-HRL                                                                             - 4 -



During the relevant period, defendants caused Extreme Networks' shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial statements, business and prospects. Specifically, defendants caused or allowed Extreme Networks to issue statements that failed to disclose or misstated the following: (1) that the Company had material weaknesses with its internal controls that prevented it from issuing accurate financial reports and projections; (2) that because of improperly recorded stock-based compensation expenses, the Company's financial results violated GAAP; and (3) that the Company's public disclosures presented an inflated view of Extreme Networks' earnings and earnings-per-share. ¶¶5, 55, 62-68.

The Company's anticipated restatement of its financial statements for the past several years will most assuredly negatively impact Extreme Networks' previously reported earnings and shareholder equity. Because Grucel has been and is currently a holder of Extreme Networks' stock, he directed his attorneys, Lerach Coughlin, to file this derivative action to recover damages and other

relief for Extreme Networks, including corporate governance reforms, from defendants as recompense for the severe injuries their misconduct has inflicted upon the Company.

**B.    Procedural Status**

To date, three shareholder derivative actions have been filed on behalf of Extreme Networks in this District:

| Abbreviated Case Name | Case Number | Date Filed |
|---|---|---|
| *Wu v. Stitt et al.* | C-07-02268-HRL | April 25, 2007 |
| *Erikson v. Stitt et al.* | C-07-02388-RS | May 2, 2007 |
| *Grucel v. Stitt et al.* | C-07-2848-PVT | May 31, 2007 |

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, Grucel seeks to consolidate all pending and subsequently filed related shareholder derivative actions involving Extreme Networks in the Northern District of California.

**III.    ARGUMENT**

**A.    Consolidation of the Extreme Networks Shareholder Actions Is Proper Under Rule 42(a)**

Pursuant to Fed. R. Civ. P. 42(a), Grucel seeks an order consolidating the above-referenced actions, and ordering that any other actions filed in or transferred to this Court which arise out of or relate to the same facts as alleged in the above-referenced actions should be consolidated for all purposes.

Each of the Extreme Networks shareholder actions currently pending in this District (the "Related Actions") seeks to remedy defendants' breaches of their fiduciary duties and alleges that defendants have been unjustly enriched as a result of the Company's stock option granting practices. The Related Actions thus involve common questions of law and fact. The power to consolidate related actions falls within the broad inherent authority of every court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Rule 42(a) provides that:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

NOT OF MTN & MTN TO CONSOLIDATE ACTIONS & APPT LD PLTF & LD COUNSEL; MEMO OF Ps & As IN SUPP THEREOF - C-07-02268-HRL - 6 -

Fed. R. Civ. P. 42(a); *Erikson v. Cornerstone Propane Partners LP*, No. C 03-2522 MHP, 2003 U.S. Dist. LEXIS 18009 (N.D. Cal. Sept. 9, 2003). A court has discretion to consolidate related cases which involve common questions of fact and law under Rule 42(a) "under the policy that considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event . . . ." *Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970); *see also Schriver v. Impac Mortgage Holdings, Inc.*, Case No.: SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607, at *6 (C.D. Cal. May 2, 2006).

Courts have indeed recognized that consolidation of similar shareholder actions can be beneficial to the court and the parties by "'expediting pretrial proceedings, avoiding duplication . . . and minimizing expenditure of time and money. . . .'" *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976); *see also Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999) (consolidation pursuant to Rule 42(a) eases the burden on all parties involved). "[W]hen consolidation is appropriate, the Court has the discretion to order the consolidation of subsequently-filed or transferred cases that allege similar facts as those alleged in the current shareholder derivative suits." *Horn v. Raines*, 227 F.R.D. 1, 2 (D.D.C. 2005) (ordering consolidation of all related derivative actions); *Schriver*, 2006 U.S. Dist. LEXIS 40607, at *6.

Accordingly, Grucel respectfully submits that the Related Actions should be consolidated for all purposes under Rule 42(a).

### B.    Grucel Is the Most Adequate Lead Plaintiff

The courts have consistently held that the decision of which plaintiff should control a shareholder derivative litigation should be analyzed via objective factors that are most likely to demonstrate which plaintiff will best serve the interests of the shareholder base as a whole. *TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, No. 18336, 2000 Del. Ch. LEXIS 147, at *10 (Del. Ch. Oct. 17, 2000). The United States Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), concluded that a plaintiff who leads a shareholder derivative suit occupies a position "of a fiduciary character." *Id.* at 549. The Supreme Court explained, "[t]he interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity." *Id.* As a result, courts typically, after consolidating related derivative actions, select the

proposed lead plaintiff who is most capable of diligently and responsibly discharging his fiduciary obligations. Indeed, several courts across the nation have looked to the standards utilized for selecting lead plaintiffs in federal securities class actions in appointing lead plaintiffs in shareholder derivative actions. *Horn*, 227 F.R.D. at 2.

Delaware courts, which are most familiar with shareholder derivative actions, have consistently held that the decision of which plaintiff should control a shareholder derivative litigation should be analyzed via objective factors that are most likely to demonstrate which plaintiff will best serve the interests of the shareholder base as a whole. *TCW*, 2000 Del. Ch. LEXIS 147, at *10. Thus, in determining who should be lead plaintiff in this action, the Court should carefully consider the following objective criteria:

- *First*, the "Court should consider the quality of the pleading[s]. . . ."
- *Second*, the "Court should give weight to the shareholder plaintiff that has the greatest economic stake in the outcome of the lawsuit."[3]
- *Third*, the "Court should accord some weight in the analysis to whether a particular litigant has prosecuted its lawsuit with greater energy, enthusiasm or vigor than have other similarly situated litigants."

*Id.* at **10-11.

Applying these factors here counsels in favor of appointing Grucel, a holder of Extreme Networks stock, as lead plaintiff. While Grucel did not file the first action on behalf of Extreme Networks, he filed a particularly well-researched and comprehensive complaint. Grucel's Complaint is 36 pages, consisting of 127 paragraphs, and alleges 11 counts of violations of state and federal laws. *See generally* Complaint. Moreover, Grucel seeks comprehensive relief, including, *inter alia*: (1) disgorgement of profits; (2) directors and officers' options plans voided; (3) unexercised options cancelled; (4) an accounting; and (5) adoption of new corporate governance policies. *Id.* A review of the Complaint's comprehensive allegations makes clear that it is of high "quality." *See TCW*,

---

[3] "This factor, of course, is similar to the federal system that now uses a model whereby the class member with the largest economic interest in the action is given responsibility to control the litigation. . . . [I]t seems appropriate, at least, to give recognition to large shareholders . . . who are willing to litigate vigorously on behalf of an entire class of shareholders . . . ." *Id.*

2000 Del. Ch. LEXIS 147, at *10. Grucel has thus demonstrated his intention to aggressively represent the interests of Extreme Networks in this case with "energy, enthusiasm" and "vigor." *Id.* at *11. Accordingly, Grucel should be appointed lead plaintiff in the *Extreme Networks* shareholder derivative litigation.

### C. Lerach Coughlin is Uniquely Qualified to Serve as Lead Counsel

Grucel has selected Lerach Coughlin to serve as his counsel and lead counsel on behalf of Extreme Network shareholders because of its unique qualifications and resources to pursue recovery on behalf of Extreme Network shareholders. Lerach Coughlin is a national law firm with over 160 lawyers, including more than 20 lawyers in its San Francisco, California office. Lerach Coughlin's substantial presence in San Francisco will reduce litigation costs overall, improve communication with the Court, and generally streamline this litigation. Moreover, Lerach Coughlin and its shareholder derivative litigation department led by William S. Lerach and Darren J. Robbins, possess extensive experience litigating complex shareholder actions.[4] Over the past several years they have recovered hundreds of millions of dollars for corporations and shareholders and obtained ground-breaking corporate governance reforms.

#### 1. Lerach Coughlin Brings Unparalleled Experience and Leadership to Complex Shareholder Litigations

Lerach Coughlin has earned a reputation for aggressively and skillfully pursuing recoveries and corporate reform on behalf of shareholders. Many federal courts have noted the depth of Lerach Coughlin's resources and the firm's ability to benefit plaintiffs in similar representative shareholder actions. *See, e.g.*, *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, MDL-1446, 2006 U.S. Dist. LEXIS 43146, at *77 (S.D. Tex. June 5, 2006) (Lerach Coughlin is "comprised of probably the most prominent securities class action attorneys in the country"); *Schriver*, 2006 U.S. Dist. LEXIS 40607, at *36 ("Lerach Coughlin has extensive experience litigating [shareholder] actions . . . [and that] [t]here is no real dispute among the movants regarding Lerach Coughlin's qualifications to prosecute

---

[4]   *See* Williams Decl., Ex. 5 (Lerach Coughlin's firm resume) and the firm's website available at http://www.lerachlaw.com.

this action"); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio. 2005) (finding that Lerach Coughlin "will represent deftly the class's interests").[5]

When faced with multiple lead plaintiff motions in the largest, most complex shareholder action in the United States history, U.S. District Judge Melinda Harmon of the Southern District of Texas appointed Lerach Coughlin as sole lead counsel to coordinate the efforts of other counsel and direct the prosecution of the *Enron* case, concluding:

> [T]he Court has found that the submissions of [Lerach Coughlin] stand out in the breadth and depth of its research and insight. . . .
>
> [T]he Court has reviewed in careful detail the submissions of [Lerach Coughlin] regarding its competency to serve as Lead Counsel and finds it fully capable of representing Lead Plaintiff and the class. . . .

*In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002). In June 2006, after more than four years of hard-fought litigation resulting in partial settlements of more than $7 billion, Judge Harmon's high regard for Lerach Coughlin attorneys has not changed: Lerach Coughlin "is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate." *Enron*, 2006 U.S. Dist. LEXIS 43146, at *77.

In addition to its experience and resources to pursue and litigate shareholder actions, Lerach Coughlin has recovered substantial money damages and achieved corporate governance reforms in shareholder representative actions. For example, Lerach Coughlin was responsible for recovering $55 million in *In re Storage Tech. Corp. Sec. Litig.*, No. 92-B-750 (D. Colo.). The firm also prosecuted a shareholder derivative action on behalf of Sprint Corporation which resulted in governance changes that were heralded by Robert Monks, the founder of LENS Governance Advisors: "'There has never been an occasion in American corporate history when a company has

---

[5] *See also In re Versata, Inc. Sec. Litig.*, No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270, at *25 (N.D. Cal. Aug. 17, 2001) (Illston, J.) (Lerach Coughlin chosen based on its strong national reputation in handling large and complex securities class actions); *Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, Civ. No. 00-3605 (DRD), 2000 U.S. Dist. LEXIS 16712, at *16 (D.N.J. Nov. 16, 2000) (Debevoise, J.) ("This firm has experience in prosecuting complex securities actions, has been appointed lead counsel in numerous consolidated litigations, and is qualified to represent the Local 144 Group in the instant action.").

NOT OF MTN & MTN TO CONSOLIDATE ACTIONS & APPT LD PLTF & LD COUNSEL; MEMO
OF Ps & As IN SUPP THEREOF - C-07-02268-HRL                                                                    - 10 -

agreed to so many groundbreaking corporate governance reforms in one fell swoop.'" *See Sprint Settlement Includes Groundbreaking Changes for Independent Directors*, 19 Andrews Corp. Officers & Directors Liab. Litig. Rep. 7 (Apr. 7, 2003). Williams Decl., Ex. 6.

Similarly, Lerach Coughlin achieved significant corporate governance reforms in the *Ashland* shareholder derivative litigation, *Central Laborers' Pension Fund v. Chellgren, et al.*, No. 02-CI-02174 (Ky. Cir. Ct.), including the establishment of enhanced director independence standards, the imposition of both minimum director stock ownership requirements and a minimum stock option holding period, and the appointment of a shareholder nominated director. *See generally* Bruce Schreiner, *Ashland Agrees to Corporate Governance Changes to Settle Shareholder Lawsuit*, Associated Press, Jan. 28, 2005 (noting the extensive corporate governance reforms achieved in the shareholder action that placed Ashland Inc. "at the forefront of corporate governance"). Williams Decl., Ex. 7.

Likewise, Lerach Coughlin successfully prosecuted *Barry v. Cotsakos, et al.* ("*E*Trade Group, Inc. Derivative Action*"), No. CIV419804 (Cal. Super. Ct. 2001), a shareholder derivative action which resulted in groundbreaking corporate governance changes at E*Trade, including an $800,000 reduction in the Chief Executive Officer ("CEO"'s) base salary and the return to E*Trade of $6 million in cash and 2 million shares of E*Trade stock previously granted to the CEO as well as the appointment of a new outside director to serve as the Chair of E*Trade's executive compensation committee. William Decl., Ex. 8.

Lerach Coughlin was also recently able to restructure a board of directors and obtain pervasive corporate governance changes as part of a resolution of the *Hanover* shareholder litigation that was hailed as "a model for corporate reform in the post-Enron era." William Decl., Ex. 9. Corporate governance groups lauded the settlement, which granted shareholders with more than 1% of company stock the right to nominate two independent directors to the company's slate of candidates, among other reforms, as "groundbreaking" and stated that the settlement "goes to the heart of corporate power." *Id*. In sum, there is simply no question that Lerach Coughlin attorneys have an unparalleled record of success in the achievement of significant, meaningful results in shareholder derivative actions.

1      Finally, Lerach Coughlin is currently serving as lead counsel or co-lead counsel in multiple
2  shareholder derivative actions pending in this District, alleging improper manipulation of stock
3  options, including: *In re KLA-Tencor Shareholder Derivative Litigation*, No. C-06-03445-JW; *In re*
4  *CNET Corp. Shareholder Derivative Litigation*, C-06-3817-WHA; and *In re Marvell Shareholder*
5  *Derivative Litigation*, C-06-03894-RMW. Accordingly, Lerach Coughlin has the resources and
6  experience to lead this action toward recovery and governance measures for the Company and its
7  shareholders.

8  **IV.    CONCLUSION**

9      Accordingly, Grucel's Motion to Consolidate Actions and to Appoint Frank A. Grucel, Jr.
10 Lead Plaintiff and Appoint Lerach Coughlin Stoia Geller Rudman & Robbins LLP Lead Counsel
11 should be granted.

12 DATED: June 8, 2007    Respectfully Submitted,

13                        LERACH COUGHLIN STOIA GELLER
                            RUDMAN & ROBBINS LLP
14                        JOHN K. GRANT
                          SHAWN A. WILLIAMS
15                        MONIQUE C. WINKLER
                          AELISH M. BAIG

16

17
                                   s/Shawn A. Williams
18                              SHAWN A. WILLIAMS

19                        100 Pine Street, Suite 2600
                          San Francisco, CA 94111
20                        Telephone: 415/288-4545
                          415/288-4534 (fax)

21

22

23

24

25

26

27

28

NOT OF MTN & MTN TO CONSOLIDATE ACTIONS & APPT LD PLTF & LD COUNSEL; MEMO
OF Ps & As IN SUPP THEREOF - C-07-02268-HRL                                      - 12 -

|    |    |
|----|----|
| 1  |    |
| 2  | LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP |
| 3  | DARREN J. ROBBINS<br>TRAVIS E. DOWNS III |
| 4  | KATHLEEN A. HERKENHOFF<br>JAMES I. JACONETTE |
| 5  | BENNY C. GOODMAN III<br>MARY LYNNE CALKINS |
| 6  | 655 West Broadway, Suite 1900<br>San Diego, CA  92101 |
| 7  | Telephone:  619/231-1058<br>619/231-7423 (fax) |
| 8  | LERACH COUGHLIN STOIA GELLER |
| 9  | RUDMAN & ROBBINS LLP<br>THOMAS G. WILHELM |
| 10 | 9601 Wilshire Blvd., Suite 510<br>Los Angeles, CA  90210 |
| 11 | Telephone: 310/859-3100<br>310/278-2148 (fax) |
| 12 | [Proposed] Lead Counsel for Plaintiffs |
| 13 |    |
| 14 |    |
| 15 |    |
| 16 | T:\casesSF\extreme Networks\MOT00042627_consolidate.doc |

NOT OF MTN & MTN TO CONSOLIDATE ACTIONS & APPT LD PLTF & LD COUNSEL; MEMO OF Ps & As IN SUPP THEREOF - C-07-02268-HRL

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 8, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 8, 2007.

        s/ Shawn A. Williams
SHAWN A. WILLIAMS

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail: ShawnW@lerachlaw.com

# Mailing Information for a Case 5:07-cv-02848-PVT

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Travis E. Downs , III**
  travisd@lerachlaw.com,e_file_sd@lerachlaw.com

- **Alan Roth Plutzik**
  aplutzik@bramsonplutzik.com

- **Shawn A. Williams**
  shawnw@lerachlaw.com,cwood@lerachlaw.com,e_file_sf@lerachlaw.com,travisd@lerachlaw.cor

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Darren J. Robbins
 Lerach Coughlin Stoia Geller Rudman  & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101
```