1    SCHIFFRIN BARROWAY
     TOPAZ & KESSLER, LLP
2    Alan R. Plutzik, Of Counsel (Bar No. 077785)
     2125 Oak Grove Road, Suite 120
3    Walnut Creek, California 94589
     Telephone: (925) 945-0770
4    Facsimile: (925) 945-8792

5        -and-

6    Lee Rudy
     Robin Winchester
7    Nichole Browning
     Emanuel Shachmurove
8    280 King of Prussia Road
     Radnor, PA  19087
9    Telephone: (610) 667-7706
     Facsimile: (610) 667-7056

10

11                  **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

13                        **SAN JOSE DIVISION**

14

15   YENNA WU, Derivatively on Behalf of Nominal        )    Case No.: 07-02268-RMW
     Defendant EXTREME NETWORKS, INC.                   )
16                                                      )
                   Plaintiff                            )    **NOTICE OF MOTION AND**
17                                                      )    **MOTION TO CONSOLIDATE**
                   v.                                   )    **RELATED ACTIONS AND**
18                                                      )    **APPOINT LEAD PLAINTIFFS**
     GORDON L. STITT, HERB SCHNEIDER,                   )    **AND LEAD COUNSEL;**
19   STEPHEN HADDOCK, PAUL ROMEO, VITO                  )    **MEMORANDUM OF POINTS**
     PALERMO, HAROLD COVERT, DARRELL                    )    **AND AUTHORITIES IN**
20   SCHERBARTH, CHRISTOPHER N. TODD,                   )    **SUPPORT THEREOF**
     ALEXANDER J. GRAY, FRANK C. CARLUCCI,              )
21   WILLIAM R. SLAKEY, CHARLES CARINALLI,              )
     HARRY SILVERGLIDE, MICHAEL WEST,                   )
22   KENNETH LEVY, ROBERT L. COREY, PETER               )
     WOLKEN, PROMOD HAQUE, AND EXTREME                  )    Date: 8/17/07
23   NETWORKS, INC.,                                    )    Time: 9:00 a.m
                                                        )    Courtroom: 6, 4th Floor
24                   Defendants.                        )    Judge: Ronald M. Whyte
                     and                                )
25                                                      )
     EXTREME NETWORKS, INC.,                            )
26                                                      )
                   Nominal Defendant.                   )
27
     *To be consolidated with:*
28

     ─────────────────────────────────────────────────────────
     NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS AND APPOINT
     LEAD PLAINTIFFS AND LEAD COUNSEL; MPA IN SUPPORT THEREOF                    1
     Case No.  C 07-cv-2268-RMW

1  LINDA ERIKSON, Derivatively on Behalf of )  Case No.: 07-02388-RMW
   Nominal Defendant EXTREME NETWORKS, INC. )
2                                            )
       Plaintiff,                            )
3                                            )
          v.                                 )
4                                            )
   GORDON L. STITT, HERB SCHNEIDER,          )
5  STEPHEN HADDOCK, PAUL ROMEO, VITO         )
   PALERMO, HAROLD COVERT, DARRELL           )
6  SCHERBARTH, CHRISTOPHER N. TODD,          )
   ALEXANDER J. GRAY, FRANK C. CARLUCCI,     )
7  WILLIAM R. SLAKEY, CHARLES CARINALLI,     )
   HARRY SILVERGLIDE, MICHAEL WEST,          )
8  KENNETH LEVY, ROBERT L. COREY, PETER      )
   WOLKEN, and PROMOD HAQUE,                 )
9            Defendants,                      )
         and                                 )
10 EXTREME NETWORKS, INC.,                   )
            Nominal Defendant.               )
11
   To be consolidated with:
12

13 FRANK A. GRUCEL, JR., Derivatively on Behalf of )  Case No.: 07-2848-RMW
   Nominal Defendant EXTREME NETWORKS, INC. )
14                                           )
       Plaintiff,                            )
15                                           )
          v.                                 )
16                                           )
   GORDON L. STITT, MICHAEL WEST, WILLIAM    )
17 R. SLAKEY, MICHAEL J. PALU, ALEXANDER J.  )
   GRAY, HERB SCHNEIDER, FRANK C.            )
18 CARLUCCI, STEPHEN HADDOCK, ALICIA         )
   JAYNE MOORE, HARRY SILVERGLIDE,           )
19 ROBERT L. COREY, KENNETH LEVY,            )
   CHARLES P. CARINALLI and PETER WOLKEN,    )
20          Defendants,                       )
         and                                 )
21 EXTREME NETWORKS, INC.,                   )
            Nominal Defendant.               )
22                                           )
                                             )
23                                           )

24     TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

25     PLEASE TAKE NOTICE that on August 17, 2007, at 9:00 a.m. or as soon thereafter as

26 the matter can be heard by the Honorable Ronald M. Whyte, United States District Court Judge,

27 280 South 1st Street, Courtroom 6, 4th Floor, San Jose, CA 95113, Derivative Plaintiffs Yenna

28 Wu ("Ms. Wu") and Linda Erikson ("Ms. Erikson") (collectively "Proposed Derivative Lead

1    Plaintiffs") will, and hereby do, move this court for an order to: (i) consolidate the above-

2    captioned related shareholder derivative actions; (ii) appoint Ms. Wu and Ms. Erikson as Lead

3    Plaintiffs; and (iii) appoint Proposed Derivative Lead Plaintiffs' counsel, Schiffrin Barroway

4    Topaz & Kessler, LLP ("Schiffrin Barroway"), as Lead Counsel.

5

6    Dated: July 10, 2007                              **SCHIFFRIN BARROWAY**
                                                        **TOPAZ & KESSLER, LLP**
7

8                                                       _Alan R. Plutzik, Of Counsel (Bar No. 077785)_

9                                                       Alan R. Plutzik, Of Counsel (Bar No. 077785)
                                                        2125 Oak Grove Road, Suite 120
10                                                      Walnut Creek, California 94598
                                                        Telephone: (925) 945-0770
11                                                      Facsimile: (925) 945-8792

12                                                      -and-

13                                                      Lee Rudy
                                                        Robin Winchester
14                                                      Nichole Browning
                                                        Emanuel Shachmurove
15                                                      280 King of Prussia Road
                                                        Radnor, PA 19087
16                                                      Telephone: (610) 667-7706
                                                        Facsimile: (610) 667-7056
17
                                                        *Counsel for [Proposed] Lead Plaintiffs*
18                                                      *Yenna Wu and Linda Erikson*
                                                        *and [Proposed] Lead Counsel*
19

20

21

22

23

24

25

26

27

28

---

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Ms. Yenna Wu ("Ms. Wu") and Ms. Linda Erikson ("Ms. Erikson") (collectively "Proposed Derivative Lead Plaintiffs") submit this motion to: (i) consolidate the above-captioned related shareholder derivative actions; (ii) appoint Ms. Wu and Ms. Erikson as Lead Plaintiffs; and (iii) appoint Proposed Derivative Lead Plaintiffs' counsel, Schiffrin Barroway Topaz & Kessler, LLP ("Schiffrin Barroway"), as Lead Counsel.

### II.    BACKGROUND AND PROCEDURAL HISTORY

The above-captioned matters are shareholder derivative actions brought on behalf of nominal defendant Extreme Networks, Inc. ("Extreme" or the "Company") against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

For at least three years, Extreme's directors, together with its top officers, engaged in a secret scheme to grant undisclosed, in-the-money[1] stock options to themselves and others by backdating stock option grants to coincide with historically low closing prices of Extreme's common stock. In fact, in a striking pattern, for three years, from 2000 through 2003 (the "Relevant Period"), at least 6 of 7 of the purported grant dates disclosed in proxy statements, were dated to coincide with particularly low closing prices, which is strongly indicative of backdating. Furthermore, those 6 tainted grant dates comprise 18 of the 19 individual grants during the Relevant Period and encompass 6.2 million out of 6.7 million shares granted during the relevant period. Several examples of Defendants' improperly granted stock options are shown in the charts below which illustrate that the grants were made when Extreme's stock was trading at historically low prices:

---

[1] "In-the-money" refers to when the exercise price of an option is below the market price of the underlying stock.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28





NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT
LEAD PLAINTIFFS AND LEAD COUNSEL
Case No.  C 07-cv-2268-RMW

2

1

2

3

4

5

6

7

8

9

10

11



12

13

14

15

16

17

18

19



20

21    By engaging in this scheme, Defendants were able to conceal that Extreme was not

22    recording material compensation expenses and was materially overstating the Company's net

23    income and earnings for at least 2000 through 2006. As a result, Extreme has suffered, and will

24    continue to suffer, significant financial and non-monetary damages and injuries, several of which

25    were identified in a report issued by the Center for Financial Research and Analysis on May 16,

26    2006, entitled "Options Backdating – Which Companies Are at Risk?":

27        • SEC investigation risk – The SEC has begun information
           investigations at many companies in recent months and has also
28         begun to call for improved disclosures around all areas of executive
           compensation.

NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT
LEAD PLAINTIFFS AND LEAD COUNSEL                                                    3
Case No. C 07-cv-2268-RMW

1

2

- Accounting restatement risk – Some companies which have admitted backdating options have accompanied those admissions with financial restatements impacting both the balance sheet and earnings.

3

4

5

- Tax/Cash implications – The change in options from the practice of options backdating may force some companies to restate tax positions for the years in question, which could result in an obligation to pay back taxes.

6

7

8

- Management credibility risk – If a reputable management team is found to have repeatedly backdated options, thereby enriching themselves at the expense of shareholder, the reputation of management (and the related stock premium for superior management) could take a hit.

9

10

11

As a result of Defendants' egregious misconduct Extreme has sustained millions of dollars in damages, and the recipients of the backdated stock options have garnered millions of dollars in unlawful profits.

12

13

14

15

16

17

18

19

20

21

22

23

On April 25 and May 2, 2007, Ms. Wu and Ms. Erickson filed the first two shareholder derivative complaints on behalf of the Company and against certain members of its Board of Directors and its top executive officers to remedy Defendants' breaches of fiduciary duties and other violations of law which have caused damage to Extreme as a result of Defendants' backdating scheme. Shortly thereafter, on May 22, 2007, the Proposed Derivative Lead Plaintiffs, together with Defendants, filed a stipulation consolidating the two related actions, appointing Ms. Wu and Ms. Erikson as Lead Plaintiffs and their counsel, Schiffrin Barroway, as Lead Counsel and setting a schedule for the filing of a consolidated complaint and a subsequent briefing schedule. Thereafter, on May 31, 2007, Frank Grucel filed a shareholder derivative complaint also predicated upon Defendants' conduct of authorizing the backdating of stock option grants to Extreme's top executives at the expense of Extreme and its shareholders.

24

25

26

27

28

Subsequently, on June 15, 2007, Plaintiff Wu filed a Verified Amended Shareholder Class Action and Derivative Complaint (the "Amended Complaint") against all Defendants. The Amended Complaint contained allegations that the Company was in violation of Delaware General Corporations Law for having gone 18 months without an annual stockholders meeting. Finally, on June 28, 2007, Extreme filed form 8-K with the Securities and Exchange

NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT LEAD PLAINTIFFS AND LEAD COUNSEL
Case No. C 07-cv-2268-RMW

4

1  Commission, announcing the Company's plans to hold an annual shareholder meeting on July

2  30, 2007.

3  ### III.    THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS

4      The Proposed Derivative Lead Plaintiffs request that the following actions (hereafter,

5  collectively referred to as "the Related Derivative Actions") be consolidated:

6

7

| Case Name | Case No. | Filing Date |
|-----------|----------|-------------|
| *Yenna Wu v. Gordon L. Stitt, et. al.*[2] | C07-cv-2268-RMW | April 25, 2007 |
| *Linda Erikson v. Gordon L. Stitt, et. al.* | C07-cv-2388-RMW | May 2, 2007 |
| *Frank A. Grucel, Jr. v. Gordon L. Stitt, et. al.* | C07-cv-2848-RMW | May 31, 2007 |

13      The consolidation of actions in federal court is governed by Rule 42 of the Federal Rules

14  of Civil Procedure which provides:

15

16      When actions involving a common question of law or fact are pending before the
       court, it may order a joint hearing or trial of any or all the matters in issue in the
17      actions; it may order all the actions consolidated; and it may make such orders
       concerning proceedings therein as may tend to avoid unnecessary costs or delay.
18

19  Fed.R.Civ.P. 42(a). *See also Erikson v. Cornerstone Propane Partners LP*, 2003 U.S. Dist.

20  LEXIS 18009 at *7 (N.D. Cal. 2003) ("Rule 42(a) empowers the court to consolidate "actions

21  involving a common question of law or fact"). This Court has broad discretion under this rule to

22  consolidate cases pending within the District. *Abate v. Lewis*, 1996 U.S. App. LEXIS 639, at

23  *16 (9th Cir. 1996) (citations omitted).

24      Here, consolidation of the Related Derivative Actions is warranted as all of these actions

25  are dependant on proof of the same facts; specifically, whether Extreme's Board of Directors

26  improperly authorized the backdating of stock options awarded to top company executives.

27

28  _____
   [2] On June 20, 2007 an Order Relating *Wu v. Stitt*, et al., *Erikson v. Stitt*, et al. and *Grucel v. Stitt, et al.*, was entered by this Court.

1   Since the Related Derivative Actions currently pending before this Court present virtually

2   identical factual and legal issues, involve the exact same Defendants, and will involve the same

3   discovery, consolidation is appropriate. *See Rendon v. City Of Fresno*, 2006 U.S. Dist. LEXIS

4   41140, at * 17 (E.D. Cal. June 2, 2006) (two civil rights cases alleging police use of excessive

5   force were consolidated even though there would be different factual issues at trial); *See also*

6   *Millman v. Brinkley*, 2004 U.S. Dist. LEXIS 20113, at *7 (N.D. Ga. Oct. 1, 2004) (consolidating

7   derivative actions where the same defendants were alleged to have committed the same acts and

8   caused the same damage to the same company during the same time period). Indeed, if not

9   consolidated, the ensuing separate derivative actions will result in virtually identical discovery

10  requests, motions practice, and the like, and will thus cause an unnecessary drain on judicial

11  resources.

12      Moreover, Defendants will suffer no prejudice by litigating one consolidated action rather

13  than three separate suits. Indeed, consolidation would ensure that this litigation, brought for the

14  benefit of the Company, is disposed of in the most cost-effective manner for the Company. *See*

15  *Id.* (consolidation of derivative actions is particularly appropriate because the "cost of defending

16  these multiple actions may well do serious harm to the very corporation in whose interest they

17  are supposedly brought"). Consolidation would therefore inure to the benefit of all parties

18  involved.

19

20  **IV.    MS. WU AND MS. ERIKSON SHOULD BE APPOINTED AS LEAD PLAINTIFFS**

21      As the Supreme Court recognized in *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541

22  (1949), a plaintiff who leads a shareholder's derivative suit occupies a position "of a fiduciary

23  character," in which "[t]he interests of all in the redress of the wrongs are taken into his hands,

24  dependent upon his diligence, wisdom and integrity." *Id.* Additionally, Rule 23.1 of the Federal

25  Rules of Civil Procedure provides that a plaintiff must fairly and adequately represent the

26  interests of the shareholders in enforcing the rights of the corporation. Thus, when considering

27  the appointment of lead plaintiffs in shareholder derivative actions, courts look to which

28  shareholders will adequately serve the interests of the derivative plaintiffs and the nominal

1    defendant. *See In re Chordiant Derivative Litigation*, Master File No. C 06-04671 JW (Nov. 27,

2    2006 N.D. Ca.) (Order) (appointing lead plaintiff and Schiffrin Barroway as lead counsel in

3    derivative litigation and citing Rule 23.1 as a guideline to use when appointing lead plaintiff in a

4    derivative action)[3]; *see also Millman*, 2004 U.S. Dist. LEXIS 20113, at *8; *Dollens v. Zionts*

5    2001 U.S. Dist. LEXIS 19966, at *5 (N.D. Ill. Dec. 4, 2001) ("courts should appoint a derivative

6    plaintiff that's likely to benefit the plaintiffs the most").

7         The Proposed Derivative Plaintiffs clearly satisfy these criteria, as they have been long-

8    term holders and currently maintain shares of Extreme stock.  Moreover, Proposed Derivative

9    Lead Plaintiffs filed the first two complaints on behalf of Extreme and, in addition to the

10   backdating allegations, the Amended Complaint also alleges a unique claim regarding Extreme's

11   failure to hold an annual stockholders meeting in violation of Delaware law. Further, Proposed

12   Derivative Lead Plaintiffs have retained competent and experienced counsel as proposed Lead

13   Counsel, the law firm of Schiffrin Barroway.  Therefore, for all of the foregoing reasons, Ms.

14   Wu and Ms. Erikson should be appointed as Lead Plaintiffs and their counsel, Schiffrin

15   Barroway, should be appointed as Lead Counsel.

16

17   **V.    THE COURT SHOULD APPOINT LEAD COUNSEL**

18        **A.    Appointment of Lead Counsel is Necessary to Effectively**
                **Prosecute the Consolidated Action**
19

20        A court which has consolidated actions may at its discretion, appoint Lead Counsel to

21   prosecute the consolidated cases.  Charles Alan Wright and Arthur R. Miller, Federal Practice

22   and Procedure § 2385 (2d ed. 1987) cited in *Walker v. Deutsche Bank, AG*, 2005 U.S. Dist.

23   LEXIS 19776, at * 8 (S.D.N.Y. Sept. 6, 2005).  *MacAlister v. Guterma*, 263 F.2d 65 (2d Cir.

24   1958) is the seminal case on this point.  In that case, the court recognized that "[t]he benefits

25   achieved by consolidation and the appointment of general counsel, i.e. elimination of duplication

26

27   _____

28   [3] Attached hereto as Exhibit A to the Declaration of Robin Winchester in Support of Motion to Consolidate Related
     Actions, Appoint Lead Plaintiff and Lead Counsel ("Winchester Decl.").

1    and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom

2    motions and discovery proceedings will be channeled, will most certainly redound to the benefit

3    of all parties to the litigation." *Id.* at 69.

4          The Ninth Circuit has explicitly endorsed this reasoning.  See *Vincent v. Hughes Air*

5    *West, Inc.,* 557 F.2d 759, 774-75 (9th Cir. 1977) (affirming district court's appointment of Lead

6    Counsel, stating that "[t]he authority recognized in MacAlister has never been seriously

7    disputed").  Moreover, the Manual for Complex Litigation recognizes the benefits of appointing

8    Lead Counsel in complex, multiparty litigation:

9

10         Complex litigation often involves numerous parties with common or similar
           interests but separate counsel.  Traditional procedures in which all papers and
11         documents are served on all attorneys, and each attorney files motions, presents
           arguments, and examines witnesses, may waste time and money, confuse and
12         misdirect the litigation, and burden the court unnecessarily.  Instituting special
           procedures for coordination of counsel early in the litigation will help to avoid
13         these problems.

14   *Manual for Complex Litigation (Fourth) §10.22 (2004).*

15

16                  1.      **Schiffrin Barroway Should be Appointed as Lead Counsel**

17         In selecting Lead Counsel, the "guiding principle" is who will "best serve the interest of

18   the plaintiffs." *Millman*, 2004 U.S. Dist. LEXIS 20113, at * 9.  The criteria for selecting counsel

19   include factors such as "experience and prior success record, the number, size, and extent of

20   involvement of represented litigants, the advanced stage of proceedings in a particular suit, and

21   the nature of the causes of action alleged." *Id.* (citations omitted).  In addition, courts have also

22   considered the quality of the pleadings that have been filed as a factor to be weighed. *Millman*,

23   2004 U.S. Dist. LEXIS 20113, at * 9.  Each of these factors weighs in favor of appointing

24   Schiffrin Barroway as Lead Counsel.

25

26                      a.      **Schiffrin Barroway's Experience and Prior**
                                **Success is Unassailable**

27

28         Schiffrin Barroway is a Martindale Hubbell "AV" rated law firm which has focused its

practice in the securities fraud class action and shareholder derivative areas over the past 20 years. *See* Schiffrin Barroway Firm Biography.[4] With more than 60 attorneys specializing in complex shareholder litigation, Schiffrin Barroway has served as Lead or Co-Lead Counsel in numerous securities and complex litigation matters, including serving as Lead or Co-Lead Counsel in more than 150 shareholder derivative actions in state and federal courts across the country. In addition to the significant recoveries that Schiffrin Barroway has achieved on behalf of shareholders in securities fraud cases, they have had similar success in shareholder derivative litigation.

As Lead Counsel in *Klotz v. Parfet, et al.*, Case No. 03-06483-CK (Jackson County, MI 2001), Schiffrin Barroway achieved a settlement in which CMS Energy Corporation recovered a cash payment of $12 million from its directors' and officers' liability insurance and instituted a comprehensive overhaul of the Company's corporate governance program. Among other things, CMS:

- added five new independent directors, reconstituted the committees of the board of directors, and separated the roles of Chairman and CEO;

- created the position of Chief Compliance Officer to oversee and administer the Company's ethics and corporate compliance program;

- enhanced the responsibilities and procedures of the Audit Committee;

- adopted an enhanced insider trading policy and stock ownership guidelines for officers and directors; and

- reformed the Company's executive compensation practices by eliminating the use of stock options and instituting new performance criteria for cash bonuses.

As Lead Counsel in *In re Fairchild Corp. Shareholder Derivative Litigation*, Consol. C.A. No. 871-N (Del. Ch. 2004), Schiffrin Barroway recovered a cash payment of $3.76 million from Fairchild's Chairman/CEO and the Company's directors' and officers' liability insurance and instituted a broad array of corporate governance enhancements. Among other things, Fairchild:

- added two new independent directors and adopted policies increasing the responsibilities of the independent members of the board;

---

[4] Attached as Exhibit B to Winchester Decl.

1
2
- created a new Oversight Committee to oversee and pre-approve related-party transactions; and

3
4
- reformed the Company's executive compensation practices by requiring that regular and bonus compensation be directly related to the Company's performance and prohibiting senior executives from receiving non-compete and consulting payments.

5    These are but a few examples of many in which Schiffrin Barroway, serving in a Lead

6  Counsel capacity, achieved outstanding results for shareholders in complex derivative

7  shareholder litigation.

8
9
**b.    Schiffrin Barroway Has Been a Pioneer In Prosecuting Options Backdating Cases**

10
11
12
13
14
15
16
    By way of further example of Schiffrin Barroway's commitment to vigorously serving the interests of shareholders, the firm has been at the forefront of litigation concerning the alleged backdating of stock options and is currently serving as lead counsel in numerous California-based backdating cases as well as the Comverse derivative litigation in New York state court, widely regarded as one of the most prominent derivative litigations stemming from alleged backdating by corporate insiders.[5]

17
18
19
20
21
22
    Thus, in addition to establishing a proven track record of success in shareholder derivative actions generally, Schiffrin Barroway has also led the way in shareholder derivative actions alleging the exact conduct that Plaintiffs allege in the instant actions. This breadth of success should weigh heavily in favor of appointing Schiffrin Barroway as Lead Counsel. *See* Manual for Complex Litigation (Fourth) §10.224 (2004) (the court's responsibilities in appointing Lead Counsel include an assessment of counsel's qualifications, experience,

23
24
25
26
27
28
---
[5] *See e.g. In re Actel Derivative Litigation*, Master File No. C 06-06832 JW (N.D. Cal. Jan. 10, 2007) (same) (attached as Exhibit C to Winchester Decl.); *In re Network Appliance Derivative Litigation.*, Master File No. C 06-06486 JW (N.D. Cal. Jan. 10, 2007) (same) (attached as Exhibit D to Winchester Decl.); *In re Integrated Silicon Solution, Inc. Shareholder Derivative Litigation*, Master File No. C-06-04387 RMW (N.D. Cal. Aug. 22, 2006) (same) (attached as Exhibit E to Winchester Decl.); *In re Linear Technology Corporation Derivative Litigation*, Master File No. C-06-3290 MMC (N.D. Cal. June 13, 2006) (same) (attached as Exhibit F to Winchester Decl.); *In re Sigma Designs, Inc. Derivative Litigation*, Master File No. C-06-04460 RMW (N.D. Cal. Nov. 17, 2006) (same) (attached as Exhibit G to Winchester Decl.); *Qualco v. Balakrishnan, et al.*, Master File No. C-06-2811 MHP (N.D. Cal. Jan. 9, 2007) (same) (attached as Exhibit H to Winchester Decl.); *In re BEA Systems, Inc. Derivative Litigation*, Master File No. C-06-4459 RMW (N.D. Cal. Jan. 26, 2007) (same) (attached as Exhibit I to Winchester Decl.).

1  competence, and commitment to prosecuting action on behalf of plaintiffs).

2  **VI.    CONCLUSION**

3         For the reasons set forth above, the Court should grant this Motion and (i) consolidate the

4  above-captioned related shareholder derivative actions; (ii) appoint Ms. Wu and Ms. Erikson as

5  Lead Plaintiffs; and (iii) appoint Proposed Derivative Lead Plaintiffs' counsel, Schiffrin

6  Barroway, as Lead Counsel.

7

8  Dated: July 10, 2007

9                                         Respectfully Submitted,

10                                        SCHIFFRIN BARROWAY
11                                        TOPAZ & KESSLER, LLP

12

13                                        Alan R. Plutzik, Of Counsel (Bar No. 077785)
                                          2125 Oak Grove Road, Suite 120
14                                        Walnut Creek, California 94598
                                          Telephone:  (925) 945-0770
15                                        Facsimile: (925) 945-8792

16                                        -and-

17                                        Lee Rudy
                                          Robin Winchester
18                                        Nichole Browning
                                          Emanuel Shachmurove
19                                        280 King of Prussia Road
                                          Radnor, PA 19087
20                                        Telephone: (610) 667-7706
                                          Facsimile: (610) 667-7056

21
                                          *Counsel for [Proposed] Lead Plaintiffs*
22                                        *Yenna Wu and Linda Erikson*
                                          *and [Proposed] Lead Counsel*
23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT
LEAD PLAINTIFFS AND LEAD COUNSEL                                              11
Case No. C 07-cv-2268-RMW